**Ronald BLACKBURN and Barbara Blackburn, Plaintiffs–Appellants,**

**v.**

**SUNDSTRAND CORPORATION, Defendant–Appellee.**

**No. 96–3158.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1997.

Decided June 3, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied July 1, 1997.

Frank A. Perrecone (argued), Rockford, IL, Alfred W. Cowan, John S. Lowry, Brassfield, Cowan & Howard, Rockford, IL, for Plaintiffs-Appellants.

Patrick J. Winn (argued), Sundstand Corporation, Rockford, IL, for Defendant-Appellee.

Dennis A. Rendleman, Athena T. Taite, Illinois State Bar Association, Staff Counsel, Springfield, IL, for Amicus Curiae Illinois State Bar Association.

Before WOOD, JR., COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Ronald and Barbara Blackburn were injured in an automobile accident. Sundstrand Corporation's welfare benefit plan, which is covered by ERISA, paid $25,831 toward the costs of the Blackburns' medical care. They filed suit in an Illinois court against the driver of the other car and accepted $105,000 in settlement. Two parties, in addition to the Blackburns, have claims against the $105,000 fund: the Blackburns' lawyer is entitled by a contingent-fee contract to a third of the money, plus costs, and Sundstrand is entitled by virtue of a subrogation clause in its medical-care plan to reimbursement from any judgment. The Blackburns filed in state court a petition to apportion the fund. They asked, in particular, that a portion of their attorney's fee and expenses be charged against the amount due to Sundstrand, so that a net payment of $17,048 would be deemed to satisfy its subrogation right. At this point Sundstrand removed the case to federal court, which entered a judgment directing the Blackburns to remit the full $25,831. 933 F.Supp. 724 (N.D.Ill.1996). According to the district court, the Illinois common-fund doctrine—under which attorneys who generate a fund are entitled to be paid from that fund, and the beneficiaries are entitled only to the proceeds net of legal expenses—is preempted by § 514(a) of ERISA, 29 U.S.C. § 1144(a).

■ The district court did not discuss the source of its subject-matter jurisdiction, and we conclude that it had none. Sundstrand removed the case under 28 U.S.C. § 1441(b), which covers "[a]ny civil action of which the district courts have original jurisdiction founded on a claim of right arising under the Constitution, treaties or laws of the United States". The "civil action" was the tort suit by the Blackburns against the other driver, which assuredly did not arise under the Constitution, treaties, or laws of the United States. Not even the most expansive reading of ERISA covers motor vehicle collisions, just because part of the recovery may inure to the benefit of a plan. The petition to apportion the fund invoked the ancillary jurisdiction of the state court and was part of that original, non-removable action.

■ Even if we were to treat the petition as inaugurating a separate "civil action", removal would have been improper. The fundamental claim—that the Blackburns should be credited, for purposes of their duty to reimburse Sundstrand, with sums paid to the attorney whose work produced the fund—arises under state law. Sundstrand has at most an argument that ERISA preempts application of the state's common-fund rule. Yet it has been understood for a very long time that a federal defense to a claim arising under state law does not create federal jurisdiction and therefore does not authorize removal. This is true of defenses under ERISA no less than of defenses under other federal statutes. *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Rice v. Panchal*, 65 F.3d 637 (7th Cir.1995). *Rice* holds that a claim of preemption under § 514(a), in particular, does not permit removal. Removal under the diversity jurisdiction and § 1441(a) also is impossible, for the amount in controversy is less than $9,000.

■ A separate doctrine, misleadingly called "complete preemption," does permit removal when the plaintiff's own claim depends on ERISA, and the effort to craft a claim under state law reflects artful pleading. See *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Bartholet v. Reishauer AG (Zurich)*, 953 F.2d 1073 (7th Cir.1992). Section 502 of ERISA, 29 U.S.C. § 1132, provides the sole authority for a participant's claim to benefits from a welfare or pension plan. Thus if the Blackburns had sought to require Sundstrand's plan to pay additional benefits, their claim would have arisen under ERISA, and Sundstrand could have removed it. But neither the original tort action nor the petition to adjudicate adverse claims to the settlement fund sought a payment from the plan. Section 502 is irrelevant; Sundstrand's arguments (and the district court's judgment) rest exclusively on § 514(a); and for the reasons developed in *Rice* defenses of this kind do not support removal under § 1441(b).

■ Yet another consideration shows that the district court lacked jurisdiction: the Illinois common-fund doctrine is not preempted, so even if § 514(a) sometimes supported removal, Sundstrand would not be assisted. The status of the state's common-fund doctrine is a recurring question that should be clarified, and the district court's decision creates a conflict between state and federal courts in the same jurisdiction. *Scholtens v. Schneider*, 173 Ill.2d 375, 219 Ill.Dec. 490, 671 N.E.2d 657 (1996), holds that § 514(a) does not preempt the common-fund doctrine. We agree with *Scholtens*.

Section 514(a) preempts state laws "insofar as they ... relate to any employee benefit plan". Illinois's common-fund doctrine, like its parallel in federal law, e.g., *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), is not about employee benefit plans. The common-fund doctrine long predates not only ERISA but also employer-sponsored health plans. Most applications have nothing to do with health insurance in general, or employer-sponsored plans in particular. The doctrine could be thought "related" to an "employee benefit plan" only in the trivial sense that, "as many a curbstone philosopher has observed, everything is related to everything else." *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, ── U.S. ──, ──, 117 S.Ct. 832, 843, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring).

■ Although crediting plan participants with payments to counsel will reduce the plan's income from the Blackburns' suit, a state law is not "related" to a plan just because it affects the net amounts the plan pays for health care. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), holds that § 514(a) does not preempt a state tax on medical services, even though a majority of all health care is purchased these days by ERISA plans. The tax was on the medical care, not on the plans; so, here, the common-fund doctrine provides compensation for work done to create the fund; it is indiffer-

ent (does not "relate") to the basis of any particular claim to the fund. Illinois law may even increase the plan's recoveries in the long run. Subrogation clauses are not self-enforcing, and one way or the other recoveries must be paid for. Sundstrand could have hired lawyers to sue the driver who injured the Blackburns, but its net recovery might have been even lower than the $17,048 left after paying the Blackburns' lawyer. (Lower because there are economies in prosecuting all claims arising out of the accident through one lawyer.) Presumably Sundstrand would not argue that ERISA preempts the state law of contracts, which requires it to pay its lawyers. See *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). The common-fund rule amounts to the same thing, requiring a party that constructively hires a lawyer to pay for successful work. Sundstrand alternatively could have used its in-house counsel to pursue the driver, but diversion of these lawyers' time from other tasks has an opportunity cost that could be substantial. See *Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.,* 76 F.3d 114 (7th Cir.1996). But if preemption of the common-fund doctrine meant that injured persons could not charge legal costs against recoveries, people like the Blackburns would in the future have every reason to disclaim any demand for medical expenses in tort suits, throwing on plans the burden and expense of collection.

Application of the common-fund doctrine therefore is not at all like application of a state anti-subrogation law, which *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), held preempted. The law at issue in *Holliday* was directed at group health care plans, which made for a much closer "relation" than that of common-fund doctrine to ERISA plans. The common-fund doctrine is general; its effect on plans is incidental. A plan might have a better argument if its governing documents expressly required participants to pay their own legal fees (alternatively, to hire only attorneys who agree to waive the common-fund doctrine) and to remit the gross rather than the net proceeds from litigation. ERISA permits a medical plan to pay a fraction of the costs, requiring a copayment from the beneficiary. *Kennedy v. Connecticut General Life Insurance Co.,* 924 F.2d 698 (7th Cir.1991). A plan that nominally pays 100 percent of medical costs incurred following accidents, and then requires participants to hire counsel, initiate litigation, and remit any recovery (bearing costs of counsel themselves), has effectively agreed to insure only part of the real cost of care, although it advances the full cost while the participant tries to find other sources of payment. A plan may decide to accept the copayment in kind (via legal services) rather than in cash. A state's refusal to respect such a provision might be deemed equivalent to a direction that the plan pay all, rather than part, of the medical costs of accidents. But Sundstrand's plan does not have such a requirement, Illinois has not attempted to override it, and there will be time to cross that bridge when we come to it.

The judgment of the district court is vacated, and the case is remanded to the district court with instructions to remand this action to state court.