Rosa SCIANNA, and Giovanni Urso and Mario Urso, minors, by their father and next friend, Cecilio Urso, Plaintiffs,

v.

Cara M. FURLONG, and Trustmark Insurance Company (Mutual), Defendants.

No. 98 C 6435.

United States District Court, N.D. Illinois, Eastern Division.

March 8, 1999.

Stephen Fiorentino, Stephen Fiorentino, Ltd., Chicago, IL, for plaintiffs.

Douglas Mark Brown, Law Offices of Douglas M. Brown, Chicago, IL, for defendant Trustmark Ins. Co.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiffs filed this suit in state court on July 2, 1998, to recover damages for personal injuries sustained by 3–year old Giovanni Urso (Giovanni) and his brother Mario (Mario) when their mother's car was hit as she pulled out of a grocery store parking lot. On September 21, 1998, pursuant to Circuit Court of Cook County Rule 6.4, the boys' father, Cecilio Urso (Urso), filed a "Petition to Approve Minor's Settlement and Adjudicate Purported Lien" (petition).[1] Trustmark Insurance Company (Trustmark), the purported issuer of the lien in question, has removed the action to federal court, claiming that resolution of the dispute will require interpretation of the Ursos' benefits and obligations under an employee benefits plan (plan) governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* (ERISA). Plaintiffs contend that this court does not have federal question jurisdiction over the action because the petition is not a claim for relief seeking benefits under the plan and therefore the state cause of action is not preempted by ERISA. We agree with Trustmark that federal jurisdiction is proper here.

### Analysis

Under 28 U.S.C. § 1441(c), "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims

---

1. Cook County Rule 6.4 establishes the procedures to be used by judges in determining expenses, attorney's compensation, and the net amount to be distributed in cases involving minors and incompetents. The rule also states that the order approving settlement shall provide that the amount distributable to the minor shall be paid only to a representative of the ward appointed by the Probate Division. Circuit Court of Cook County Rule 6.4, Illinois Court Rules and Procedure, 1998.

or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." Section 1331, of course, provides federal jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Thus, if Urso's petition is a "separate and independent claim" that has been joined with the otherwise non-removable action against Carla Furlong, and the claim falls within the scope of "federal question" jurisdiction under § 1331, then removal of the entire action is proper.

### a. *Is the petition a separate and independent claim?*

■ Trustmark contends that "The Petition...is actually a complaint seeking to recover benefits from an employee benefit plan.... [I]t seeks to declare the rights of the father and injured son...regarding an obligation imposed by the terms and conditions of the Plan...." (Notice of Removal at ¶ 3). Urso vigorously denies that the petition is a "complaint" and intimates that its filing was merely pro forma compliance with state rules. He directs our attention to the format of the pleading:

> The PETITION is entitled "Petition to Approve Minor's Settlement and Adjudicate Purported Lien" and as the title indicates is asking the State Court for approval of the settlement and to adjudicate the lien, all of which is mandated by Cook County Circuit Court Rule 6.4. Nowhere in the PETITION does the Plaintiff GIOVANNI URSO, seek to clarify the rights under the plan, nor does he use the PETITION as a Complaint to assert rights.

(Reply at 1–2).

■ Cecilio's protestation mistakenly elevates form over substance. The title of the pleading does not change the fact that Urso is seeking first to compel Trustmark to pay benefits to which he feels his son is entitled (petition at ¶ 11), and, second, to prevent Trustmark from asserting any subrogation rights against Giovanni's recovery under the settlement agreement (*id.* at ¶ 13). The prayer for relief in the petition asks, *inter alia,* for "an Order denying Trustmark Insurance Company any right to Reimbursement as to funds received for injuries sustained by the minor, GIOVANNI URSO, a minor [sic] [2] and further ordering Trustmark Insurance Company to pay all medical bills incurred by CECILIO URSO, for injuries sustained by his minor son, GIOVANNI URSO." Notice of the petition was forwarded to Trustmark, accompanied by a summons addressed *"To each Defendant."* Clearly, Urso views Trustmark as the defendant to a legal claim which is distinct from the negligence action against Furlong. It is not the facts that the court focuses upon to determine whether the claims are "separate and independent," but rather the legal rights involved. *See American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 13, 71 S.Ct. 534, 95 L.Ed. 702 (1951) (superseded by statute on other grounds). We conclude that the petition represents a separate and independent claim for the purpose of determining removal jurisdiction under 28 U.S.C. § 1441(c).

### b. *Does the claim fall within the federal question jurisdiction?*

■ Ordinarily, a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), citing *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Rice v.*

---

**2.** It is unclear whether or not Trustmark has asserted any lien in state court. After the accident Trustmark filed a subrogation lien with Economy Preferred Insurance Company, the company covering the car driven by Giov-

anni's mother. The pleadings, however, appear to indicate that Trustmark has refused to pay any of the medical expenses because of the failure to execute a reimbursement agreement.

*Panchal,* 65 F.3d 637, 639 (7th Cir.1995). If the plaintiff's claim arises under state law, the mere assertion of federal preemption as a defensive argument—sometimes called "conflict preemption"—will not confer federal question jurisdiction. *Taylor,* 481 U.S. at 63–64, 107 S.Ct. 1542; *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 9–12, 25–27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). "Complete preemption," on the other hand, is the doctrine which recognizes that federal law may sometimes so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *Taylor,* 481 U.S. at 63–64, 107 S.Ct. 1542. The Supreme Court has found that Congress intended to make causes of action within the scope of ERISA's § 502(a) removable to federal court under the doctrine of complete preemption. *Id.* at 64, 107 S.Ct. 1542; *Rice,* 65 F.3d at 639; *Kaszula v. Parker,* 1997 WL 106267, *2 (N.D.Ill.). "If a state law claim has been 'displaced,' ... and therefore completely preempted by § 502(a), then a plaintiff's state law claim is properly 'recharacterized' as one arising under federal law." *Rice,* 65 F.3d at 640 (citations omitted); *see also Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (concluding that there is also complete preemption whenever a plaintiff's cause of action falls within the scope of an ERISA provision that he or she can enforce via § 502(a)). According to the 7th Circuit, *Franchise Tax* and *Taylor* establish that ERISA § 502(a) provides the basis for complete preemption, whereas § 514(a) provides the basis for conflict preemption. *Rice,* 65 F.3d at 639–640. We must decide, therefore, whether Cecilio's claim against Trustmark is com-

pletely preempted, or whether Trustmark's defensive arguments are merely an assertion of conflict preemption under ERISA § 514(a),[3] in which case remand would be appropriate.

■■■ Section 502(a)(1)(B)[4] of ERISA provides that "(a) A civil action may be brought—(1) by a participant or beneficiary—(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Whether a state claim falls within the scope of § 502(a) must be determined on a case-by-case basis. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). On hard cases, the Court has indicated that we should look to the case law interpreting the preemptive force of § 301 of the Labor Management Relations Act, on which the ERISA provision is modeled. *Taylor,* 481 U.S. at 64–66, 107 S.Ct. 1542; *Rice,* 65 F.3d at 643. The Seventh Circuit has gleaned several guiding principles from those cases. *Rice,* 65 F.3d at 643–644. First, if resolving the state law claim involves a purely factual inquiry that does not require any interpretation of the contract, then the state law remedy is "independent" for preemption purposes. A need to simply refer to the contract will not kick in preemption, but a need to interpret a contract term will. Second, if the plaintiff's "right" is rooted in the contract, then resolution of a claim based on that right would require interpretation of contract and preemption is appropriate. Third, where state law creates a qualitative standard by which the performance of the contract is evaluated, then that state law is completely preempted.

---

**3.** Section 514(a), codified at 29 U.S.C. § 1144(a), establishes that ERISA provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

**4.** "If a claim is within the scope of § 502(a), then a participant's ability to recover damages is limited." *Rice,* 65 F.3d at 640, citing *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Thus, plaintiffs may try to structure their actions so as not to fall within the scope of § 502(a).

■ By the express language of Urso's pleading, the petition is a claim to recover benefits due to him or his covered dependents under the terms of his plan. Urso's assignment of rights to Giovanni does not change this. Moreover, the issue at the heart of the petition is whether the language of the plan's reimbursement provision should be read through the lens of Illinois' Family Expense Act, 750 ILCS § 65/15. Under the Act, parents are liable for medical expenses incurred by their minor children. Courts interpreting the Act have concluded that a health insurance company that pays for the medical care of a dependent of a subscriber parent has no right of subrogation or reimbursement against the minor's estate. *See Estate of Hammond v. Aetna Casualty,* 141 Ill. App.3d 963, 96 Ill.Dec. 270, 491 N.E.2d 84, 85–86 (1986). Here, the adjudicating court will have to interpret the plan's subrogation provisions and determine whether the Illinois Family Expense Act renders those provisions invalid such that the plan must pay out benefits without first securing its right to reimbursement from Giovanni's settlement award. This is clearly a claim that Congress intended to federalize under § 502(a).

Urso suggests that the Seventh Circuit's decision to remand in *Speciale v. Seybold,* 147 F.3d 612 (7th Cir.), *cert. denied, Administrative Committee, Walmart Stores, Inc. v. Speciale,* — U.S. ——, 119 S.Ct. 542, 142 L.Ed.2d 450 (1998), is on point because Speciale, like Urso, filed a motion to adjudicate liens as an integral part of her state personal injury action. The posture of the case when Speciale's motion was filed, however, makes the court's holding inapposite here. Speciale, an adult employee participant in Wal–Mart's ERISA-governed plan, was injured in an automobile accident. The plan paid the major portion of her medical expenses, $54,051.07, and the remaining providers

filed medical liens to recover the unpaid $16,512.84. When Speciale settled for $45,000, she filed a motion to adjudicate requesting that the court apportion the settlement proceeds among the plan and the fifteen providers asserting claims. Wal–Mart removed the case to federal court, where the district judge denied remand and awarded the plan the entire settlement fund. The Seventh Circuit held that the district court had erroneously relied on conflict preemption under § 514(a) to find federal jurisdiction and remanded the case back to state court. The court highlighted its earlier decision in *Blackburn v. Sundstrand Corp.,* 115 F.3d 493 (7th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 562, 139 L.Ed.2d 403 (1997), which held that § 502 is "irrelevant" when "neither the original tort action nor the petition to adjudicate adverse claims to the settlement fund sought a payment from the plan." *Blackburn,* 115 F.3d at 494. The court in *Speciale* concluded by noting that "Plaintiff's personal injury case has been settled. Wal–Mart's subrogation right has not been questioned. What remains is simply a determination on the apportionment of the funds under state law." *Speciale,* 147 F.3d at 617.

The Ursos' petition against Trustmark does not represent the final chapter of the dispute in which the only thing left to do is distribute the award money. Quite the contrary, the petition is the opening legal salvo in the Ursos' battle for full compensation. When Cecilio Urso would not sign the reimbursement agreement required by the terms of the plan, Trustmark refused to pay any of the submitted claims. Now, relying on the Family Expense Act, the petition seeks to compel Trustmark to pay the benefits without the prerequisite subrogation pledge. That claim for payment of benefits is, however, completely preempted by ERISA § 502(a).[5] The peti-

---

**5.** Earlier cases in this district found removal proper where Rule 6.4 petitions invoked the Family Expense Act to avoid plan reimbursement. *See, e.g., Kaszula v. Parker,* 1997 WL

106267 (N.D.Ill.); *Fravel v. Stankus,* 936 F.Supp. 474 (N.D.Ill.1996). We acknowledge that they may no longer be good law after *Speciale.* In both *Kaszula* and *Fravel,* howev-

tion is appropriately recharacterized as a federal claim which has been joined with the separate and independent claim against Furlong, making removal proper under § 1441(c). We thus deny plaintiffs' motion to remand the entire matter to state court, deny plaintiffs' motion to strike Trustmark's answer, and order that the caption of the case be revised to reflect Trustmark's status as a defendant to the action. We also exercise our discretion under § 1441(c) to sever those matters in which state law predominates and hereby remand the negligence action against Furlong, the question of good faith settlement, and the resolution of any outstanding liens other than those issued by Trustmark. We retain jurisdiction over all questions concerning the parties' rights, benefits and obligations under the plan.

er, the plan had already paid out the benefits and the interpretation of the reimbursement clause was relevant only for a final distribution. Happily we need not harmonize the instructions given in *Rice* with the outcomes in *Speciale* and *Blackburn* to resolve this motion to remand.