Caroline CARDUCCI, et al., Plaintiffs,

v.

AETNA U.S. HEALTHCARE,
Defendant.

Jean Levine, Plaintiff,

v.

United Healthcare Corp., Defendant.

Carole West, Plaintiff,

v.

Health Net of the Northeast,
Defendant.

David Collins, Plaintiff,

v.

Oxford Health Plans, Defendant.

Noreen Bogurski, Plaintiff,

v.

Horizon Blue Cross Blue Shield
of New Jersey, Defendant.

Benjamin Edmonson, Plaintiff,

v.

Horizon Blue Cross Blue Shield
of New Jersey, Defendant.

Civil Action Nos. 01–4675(JBS), 01–4964(JBS), 01–5217(JCL), 01–5237(JWB), 01–5339(AMW), 01–5812(JBS).

United States District Court,
D. New Jersey.

May 28, 2002.

Natalie A. Finkelman, Esquire, Scott R. Shepherd, Esquire, James C. Shah, Esquire, Shepherd & Finkelman, LLC, and John W. Trimble, Jr., Esquire, Morrison & Trimble, Turnersville, NJ, for plaintiffs Carducci, Levine, and Edmonson.

Donna Siegel Moffa, Esquire, Franklin P. Solomon, Esquire, Weitz & Luxenberg, Cherry Hill, NJ, for plaintiffs West, Collins, and Bogurski.

Burt M. Rublin, Ramond A. Quaglia, Ballard Spahr Andrews & Ingersoll, LLP, for defendant Aetna U.S. Healthcare, Horizon Blue Cross Blue Shield of NJ, Horizon Healthcare Services.

Edward S. Wardell, Kelley, Wardell & Craig, LLP, Haddonfield, NJ, for defendant Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey and for Aetna U.S. Healthcare, Horizon Blue Cross Blue Shield of NJ, Horizon Healthcare Services.

William J. O'Shaughnessy, Esquire, Harvey C. Kaish, Esquire, B. John Pendleton, Esquire, McCarter & English, LLP, Newark, NJ, for defendants Oxford Health Plans, Inc. and Health Net of the Northeast, Inc.

Theodore D. Aden, Esquire, Carol A. Lafond, Esquire, Leboeuf, Lamb, Greene & McRae, LLP, Newark, NJ, and Edward A. Scallet, Esquire, Thomas F. Fitzgerald, Esquire, William F. Hanrahan, Esquire, Groom Law Group, Chartered, Washing-

ton, DC, for defendant United Healthcare Corp., k/n/a United Health Group, Inc.

Edward S. Wardell, Esquire, Raymond Quaglia, Esquire, Kelley, Wardell & Craig, LLP, Haddonfield, NJ, for defendant Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey.

## OPINION

SIMANDLE, District Judge.

## I. INTRODUCTION

This matter is presently before the Court on plaintiff's motion to remand this action to state court [Docket Item 13–1], based on a lack of federal jurisdiction. Also pending before this Court is defendants' motion to dismiss plaintiffs' Complaints [Docket Item 13–1], which will be addressed, if necessary, in a later Opinion, if this Court determines that federal question jurisdiction exists over plaintiffs' complaints under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). On January 28, 2002, this Court consolidated six cases [1] for the purpose of deciding the remand and, if necessary, the dismissal motions currently pending. Oral argument was heard on the remand issue on January 25, 2002 and April 4, 2002.

The specific issue presented by this remand motion is whether plaintiffs' state law unjust enrichment claims against their healthcare insurers, which allege that the subrogation clauses in their employee benefit health care contracts were made void and unenforceable by the New Jersey Supreme Court's decision in Perreira v. Rediger, 169 N.J. 399, 778 A.2d 429 (2001), are within federal court jurisdiction under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), and therefore properly removed by the defendants to federal court. Essentially, this Court must determine whether the monies plaintiffs now seek, that is the monies paid back to the defendants from plaintiffs' tort recoveries pursuant to the subrogation provisions in their ERISA plans, are "benefits due" under those plans, within the meaning of Section 502(a)(1)(B). Plaintiffs assert that the defendants have no valid right to subrogation from plaintiffs' tort recoveries under New Jersey law, and that the defendants' enforcement of the health care plans' subrogation provisions amounted to the unjust enrichment of the defendants contrary to New Jersey law.

For the reasons stated herein, the Court finds that plaintiffs' unjust enrichment

---

**1.** Pursuant to this Court's January 28, 2002 Consolidation Order, which was consented to by the parties, the following cases were consolidated for the purpose of the instant remand and dismissal motions: Carducci v. Aetna, Civ. No. 01–4675(JBS)(lead case); Levine v. United Healthcare Corp., Civ. No. 01–4964(JBS); West v. Health Net of the Northeast, Civ. No. 01–5217(JCL); Collins v. Oxford Health Plans, Civ. No. 01–5237(JWB); Bogurski v. Horizon Blue Cross Blue Shield of New Jersey, Civ. No. 01–5339(AMW); and Edmonson v. Horizon Blue Cross Blue Shield of New Jersey, Civ. No. 01–5812(JBS). As found in the consolidation order, the consolidated plaintiffs all filed lawsuits against their health insurance companies to recover monies collected by those companies pursuant to subro-

gation liens from subrogation clauses in their ERISA plans. Each of the consolidated claims posed similar legal and factual issues, namely, whether plaintiffs' claims for return of monies collected in subrogation by defendants after plaintiffs settled claims against third-party tortfeasors is within this Court's jurisdiction under Section 502(a)(1)(B) of ERISA. On April 5, 2002, the parties in another related action, Bibbs v. Amerihealth, Inc., Civ. No. 02–1155(JBS), submitted a consent order that they would be bound by the Court's decision regarding remand in the above consolidated matters. At the initial oral argument on the remand motion, the parties in several other actions verbally indicated that they would be bound by the Court's decision in this case.

claims are claims for "benefits due" under their ERISA plans, and therefore their state law claims are claims within Section 502(a)(1)(B) of ERISA and were properly removed to federal court. Plaintiffs' motion to remand this action and the consolidated cases to the Superior Court of New Jersey, Camden County, [Docket Item 13–1], and to the other originating Superior Courts of New Jersey, will therefore be denied.

## II. *ANALYSIS*

It must be acknowledged that this case presents a conceptually unclear area of law. Plaintiffs' motion to remand this action to state court requires this Court to determine whether there is federal removal jurisdiction over plaintiffs' claims of unjust enrichment, originally filed in the Superior Court of New Jersey, Camden County. To make that decision this Court must determine whether plaintiffs' claims fall within the purview of ERISA's civil enforcement provision, Section 502(a)(1)(B), and therefore whether plaintiffs' unjust enrichment claims are completely preempted by federal law.[2] The second, defendants' motion to dismiss, which will be addressed in a separate opinion only after federal jurisdiction is established, requires the Court to decide whether plaintiffs' state common law unjust enrichment claims must be dismissed as completely preempted under Section 502(a)(1)(B) or, alternatively, whether the claims are preempted as conflicting under Section 514(a).

Plaintiffs' Complaints allege only state law unjust enrichment claims, and plaintiffs assert that their cases must be remanded to state court for adjudication under New Jersey law, since no federal question jurisdiction exists under 28 U.S.C. § 1331, no federal diversity jurisdiction exists under 28 U.S.C. § 1332, and therefore no basis for removal under 28 U.S.C. § 1441 exists. Defendants argue that the cases were properly removed to federal court because plaintiffs are ERISA plan "participant[s] or beneficiar[ies]" who are seeking "to recover benefits due to [them] under the terms of [their] plan, [or] to enforce [their] rights under the terms of the plan" and therefore their unjust enrichment claims are completely preempted by the civil enforcement provision of ERISA.

### A. The "Well–Pleaded Complaint" Rule

The Supreme Court in *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), held that "where there is no diversity of citizenship between the parties ... the propriety of removal turns on whether the case falls within the original 'federal question' juris-

---

**2.** The first round of remand briefing by plaintiffs focused primarily on Section 514 of ERISA, which addresses conflict preemption. Complete preemption under Section 502, which is jurisdictional and relevant to the instant remand motion, is different from conflict or substantive preemption under Section 514, which displaces state law for federal law, but does not confer federal jurisdiction. *See Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242, 248 (3d Cir.2000). The Third Circuit has repeatedly instructed that " 'When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.' " *Pryzbowski*, 245 F.3d at 275 (quoting *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir.)), *cert. denied*, 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995). On January 28, 2002, this Court ordered supplemental briefing on the remand issue, focusing on the jurisdictional issues under Section 502. Any discussion of Section 514, if it is necessary, will be contained in a subsequent opinion addressing defendants' motion to dismiss.

diction of the United States District Courts." *See Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 271 (3d Cir.2001). Defendants do not contest that there is no diversity of citizenship between the parties in these consolidated cases.

The "well-pleaded complaint" rule provides that federal question jurisdiction exists only when an issue of federal law appears on the face of the complaint. *See Pryzbowski*, 245 F.3d at 271. Anticipation of a federal defense by the defendant does not create federal jurisdiction. *See id.* Complete preemption, an exception to the "well-pleaded complaint" rule, occurs when Congress so pervasively occupies a particular field (here, benefit enforcement claims under ERISA) that "any complaint that comes within the scope of [a] federal cause of action necessarily 'arises under' federal law," and is completely preempted. *Pryzbowski*, 245 F.3d at 271 (quoting *Franchise Tax Bd.*, 463 U.S. at 24, 103 S.Ct. 2841, 77 L.Ed.2d 420). The United States Supreme Court, in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), held that Congress had intended that Section 502(a) of ERISA should have extraordinary preemptive force and that "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1542. Essentially, complete preemption functions to recharacterize plaintiffs' state law claims into federal claims for the purpose of removal, thereby creating federal removal jurisdiction.

B. *Complete Preemption of Claims Against HMOs Under Section 502(a)(1)(B) of ERISA*

Section 502(a)(1)(B) provides, in relevant part:

(a) **Persons Empowered to Bring Civil Action.**—A civil action may be brought—

(1) by a participant or beneficiary—

.    .    .    .    .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Section 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B). There is no dispute that plaintiffs are all participants or beneficiaries of an ERISA plan. All parties also acknowledge that the third provision in Section 502(a)(1)(B), "to clarify ... rights to future benefits under the terms of the plan," does not apply here.

The Third Circuit most recently addressed the issue of ERISA preemption under Section 502(a)(1)(B) in *Pryzbowski*, and articulated the test to be applied when determining whether complete preemption exists:

[T]he ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of § 502(a) and is completely preempted, or the quality of medical treatment performed, which may be the subject of a state action.

245 F.3d at 273. This test clarified the distinctions made by the Third Circuit in previous cases in this area, which used a quality/quantity of care analysis. *See Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350 (3d Cir.1995)(quality of benefits claims do not fall within Section 502(a)(1)(B), whereas claims challenging the quantum of benefits due under an ERISA-regulated plan are completely preempted under ERISA's civil enforcement scheme); *In re U.S. Healthcare, Inc.*, 193 F.3d 151 (3d Cir.1999)(classifying HMO's adoption of a policy of discharging newborn infants within 24 hours after delivery was a medical determination not preempted under Sec-

tion 502(a)(1)(B)); *Lazorko v. Pennsylvania Hospital,* 237 F.3d 242 (3d Cir.2000)(holding that the denial of a beneficiary's request for hospitalization for mental illness occurred in the course of treatment, and was therefore not preempted).

As acknowledged by the Third Circuit in *Pryzbowski,* the quality/quantity distinction is not always clear. Plaintiffs here do not argue that defendants made their decision to assert and recover subrogation and reimbursement liens in the course of treatment, nor do they assert that this was an administrative decision. Rather, they argue, similar to Pryzbowski, that the claims they assert against defendants do not fit within Section 502(a)(1)(B), ERISA's civil enforcement provision, because they are not benefits under the plan. *See Pryzbowski,* 245 F.3d at 272; 29 U.S.C. § 1132(a). Plaintiffs assert that the monies they are seeking, which defendants recovered pursuant to the subrogation provision contained in their ERISA plan contracts, are not benefits under the plan. Plaintiffs also argue that this action is for unjust enrichment, not to enforce any rights they have under the terms of their ERISA plans, nor to recover benefits due under their ERISA plans. Defendants assert that the monies sought to be recovered here are a part of the benefits bundle originally provided for plaintiffs' medical care pursuant to the plans, and therefore plaintiffs' claims are seeking benefits under the plan.

The instant case does not fall neatly into the distinction of administration of benefits or medical treatment benefits, nor is the quantity/quality of care distinction helpful to this analysis. Plaintiffs claims are, however, in light of the Third Circuit case law in this area, more like an administrative complaint than a medical complaint, because they relate to the amount of benefits to which they are due under the ERISA plan. There is no dispute here about the fact of medical services having been ren-

dered under the plan. It is an external event, namely, the plaintiffs' recoveries of tort judgments or settlements embracing compensation to plaintiffs for the same medical treatment which triggers the administrative operation of the subrogation mechanism. Although it was not an administrative decision prior to the rendering of health care, as was the case in previous Third Circuit decisions, the plans' recovery in subrogation here was previously made pursuant to the terms of the plan and directly concerns the ultimate amount of benefit to which plaintiffs are entitled under the respective health care plans.

### C. *Whether Plaintiffs Seek Benefits Due Under the Plan*

Plaintiffs worded their Complaints to assert only state law claims. The complete preemption exception to the well-pleaded complaint rule, however, requires this Court to determine whether the monies plaintiffs seek are actually "benefits due ... under the terms of [the] plan" or "rights under the term of the plan." Section 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B). In order to do that, this Court must determine whether the monies sought by plaintiffs to be recouped from the defendants are benefits under the term of the plan or some other thing. Plaintiffs argue that the monies they seek, which were paid to defendants pursuant to a subrogation lien and the subrogation paragraph in the ERISA plans, are separate from the benefits they received as a result of the plan. Plaintiffs aver that their benefits under the plan were concluded when they received treatment and their medical bills were paid. Defendants argue that the monies plaintiffs seek constitute benefits under the plan because they represent a portion of the sum (benefits) initially expended by defendants for plaintiffs' medical care, which is necessarily based upon the terms of their respective plans. Defendants assert that plaintiffs' unjust

enrichment claims are just another way of seeking additional benefits they feel they are due under their plan.

Plaintiffs' complaints[3] describe the nature of their claims as follows:

This is an action seeking to undo defendant's unjust enrichment. Plaintiffs and class members previously were plaintiffs in personal injury lawsuits in New Jersey, and in connection with the settlement of their lawsuits caused to be paid out of settlement proceeds subrogation or reimbursement to [defendants] to satisfy [defendants'] subrogation or reimbursement liens. Although these liens had been filed pursuant to contract language purportedly permitting them, the New Jersey Supreme Court [in *Perreira v. Rediger, supra*] recently held that New Jersey law does not, and never did, allow insurers like defendant to file or assert reimbursement or subrogation liens.

(Removal Notice, Ex. A, Compl. at 1–2.) In their claim for unjust enrichment, plaintiffs assert that defendants have been unjustly enriched and unlawfully asserted subrogation and reimbursement liens. (Compl., ¶¶ 41–42.) Plaintiffs acknowledge that the liens asserted by defendants were originally provided for in their ERISA plans. Plaintiffs request relief in the form of return of the monies received by defendants pursuant to these liens, which they now claim are contrary to New Jersey law. (Compl., at 8, ¶¶ B–C.)

The classification of the monies sought by plaintiff was addressed at length in oral argument before this Court. Plaintiffs concede that the monies plaintiffs now seek had their genesis as benefits. (Apr. 4, 2002 Tr. 11:4–9.) Plaintiffs argue, however, that the benefits under the plan were completed once the healthcare was received by plaintiffs and paid for by defendants. (*Id.* Tr. 11:11–22.) When asked by the Court, plaintiffs' counsel was unable to give a clear statement of what the monies they sought were if not benefits:

THE COURT: And so when the plan comes along and asserts a purported contractual right to subrogation and receives that same $180 then as proceeds from Carducci's settlement, what's the nature of that bundle of money, that $180?

MR. SOLOMON: I'm not sure what you mean by the nature of that, Judge.

THE COURT: Well, what is it? Is it a contract recovery that the plan has made? Is it money that rightly always belonged to the plan and no one else? Where does this $180 come from? What is it that gives the plan the right to take it out of the plaintiff's settlement?

MR. SOLOMON: Well, purportedly it's the contract reimbursement provision under the plan that gives them the right to assert that claim.

(Apr. 4, 2002 Tr. 11:23–12:12.) The Court again questioned about the nature of the money sought, and plaintiffs' counsel responded:

THE COURT: You've argued that the $180 shouldn't be characterized as benefits, it's not benefits under the plan. Benefits has a different meaning, and that meaning is healthcare services that were rendered and paid for by the plan. And so if it's not benefits, then what is it?

MR. SOLOMON: Well, I think what we would argue is that this was money that was wrongfully taken from the plaintiffs under state law. This is a, you know, a windfall to the plan that was

---

**3.** Plaintiffs acknowledged that the facts underlying each of the consolidated cases are similar, and that it would be fair to assume that each of them asserted a Carducci-like claim. (Apr. 4, 2002 Tr. 38:2–20.) For the sake of brevity, this Court will refer only to the language of Ms. Carducci's claim.

taken in contravention of state law, of the collateral source statute, and the unjust enrichment law.... To the extent that there's any contractual provision that purportedly gives them a right, that contractual provision was never valid, it should never have been permitted to be incorporated into the plan.

(*Id.* at Tr. 13:16–14:8.)

Plaintiffs, in their supplemental reply brief in support of remand, cite to the Supreme Court's decision in *Great–West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), for the proposition that there is no contractual right under ERISA's civil enforcement provision to demand subrogation or reimbursements from their insureds. (*See* Pl.'s Supp. Reply Br. at 3–4.) Plaintiffs assert that the Supreme Court in *Great–West* held that Section 502(a)(3) supplies no cause of action for a health plan's claimed contractual right of reimbursement. (*Id.* at 4.) Defendants responded to the citation of *Great–West,* arguing that *Great–West* is distinguishable because it involves a separate ERISA provision (Section 502(a)(3) instead of Section 502(a)(1)(B)) and also because the decision is much narrower than plaintiffs represent.

Contrary to plaintiffs' argument, the Supreme Court merely held that where the *fiduciary* seeks contractual reimbursement, it cannot overcome the limitation under § 502(a)(3) which by its terms allows the fiduciary to seek only "equitable" relief. *Great–West,* 122 S.Ct. at 712–13. The Court contrasted the limitation of § 502(a)(3) to the more expansive language of § 502(a)(1)(B), which permits " 'a participant or beneficiary' to bring a civil action 'to enforce his rights under the terms of the plan,' without reference to whether the relief sought is legal or equitable...." *Great–West,* 122 S.Ct. at 718–19 (quoting § 502(a)(1)(B)). Thus, nothing in *Great–West* suggests that a participant or beneficiary does not have the ERISA right to seek reimbursement of benefits under the plan under § 502(a)(1). Since either legal or equitable relief is available to a participant or beneficiary under § 502(a)(1), the *Great–West* holding is limited to matters arising under § 502(a)(3).[4]

---

**4.** In *Great–West,* the fiduciary for an employee health plan sought to recover reimbursement from a plan beneficiary for the medical expenses which it had paid for. The fiduciary alleged that the plan's reimbursement provision permits it to recover from a beneficiary the prior payments it has made, where the beneficiary is entitled to recover from a third party. Great–West invoked § 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3), which authorizes a participant, beneficiary or fiduciary to file a civil action "(A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ... the terms of the plan." The Supreme Court examined the nature of relief sought by the fiduciary—to impose a contractual obligation upon the beneficiary to pay money—and found that this did not constitute "equitable relief" as required by § 502(a)(3)(B), *supra.* The Supreme Court repeated its observation that ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.' " *Great–West,* 122 S.Ct. at 712 (quoting *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 254, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993))(quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). The *Great–West* majority thus gave a historical reading to the statutory term "equitable relief" and found that the fiduciary failed to demonstrate that its desired remedy was within § 502(a)(3). The holding is of tangential application to the present matter, but it does serve to remind us of the importance of precision in the textual interpretation of ERISA, since "vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Great–West,* 122 S.Ct. at 718 (quoting *Mertens, supra,* 508 U.S. at 261, 113 S.Ct. 2063).

Plaintiffs also cite to two Seventh Circuit decisions in support of their position that the monies they seek are not benefits. First, plaintiffs cite *Speciale v. Seybold*, 147 F.3d 612 (7th Cir.1998), for the proposition that an action to adjudicate a lien, or a declaratory judgment action to order the distribution of settlement proceeds among ERISA plans and other creditors does not create a federal cause of action under ERISA. Plaintiffs argue that their claims were the same sort as those asserted in *Speciale*, although slightly later in the process. Next, plaintiffs cite *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997), which involved two beneficiaries of an ERISA plan who were injured in an automobile accident. The *Blackburn* court held that removal under ERISA preemption was improper based upon the well-pleaded complaint rule and the determination that "not even the most expansive reading of ERISA covers motor vehicle collisions, just because a part of the recovery may inure to the benefit of a plan." 115 F.3d at 494; *see Speciale*, 147 F.3d at 616.

Both Seventh Circuit cases, which are not controlling here, are distinguishable. First, the court in *Speciale* held that there is no preemption "in a state cause of action where there are adversarial claims to a settlement fund between an ERISA plan subrogation claim and other statutory medical liens" because the allocation of settlement funds is a matter for the state court. *Speciale*, 147 F.3d at 617. So, unlike plaintiffs here, who seek to recoup funds previously paid in subrogation and who vigorously contest defendants' subrogation rights as provided for in their ERISA plans, Speciale merely wanted her liens adjudicated and her settlement disbursed. *Id.* at 614. The Seventh Circuit determined that where plaintiff seeks a recovery for a breach of state law duty, and no contract interpretation is required, as was the case with Speciale, there is no

preemption. *Id.* at 615. However, the court went on to write that "where state law has the effect of creating a qualitative standard (e.g., 'bad faith' or 'improper') by which the performance of a contract is evaluated, then that state law is completely preempted." *Id.* Plaintiffs' unjust enrichment claim in the present case, that defendants unlawfully asserted subrogation liens against them, even under the non-binding Seventh Circuit precedent, would also be preempted since plaintiffs rely on state law to strike a portion of their ERISA plan contract. *Blackburn* too involved a state court action to apportion the funds between their attorney and their ERISA welfare benefit plan, not a challenge of the fund's subrogation rights. *See* 115 F.3d at 494.

Defendants argue, and this Court agrees, that plaintiffs' present claims are actually claims for benefits under the ERISA plans. Essentially plaintiffs seek to regain the whole benefit provided to them by defendants, including those amounts paid in subrogation pursuant to the terms of the plans. Although plaintiffs argue that no interpretation of the ERISA plan is required, that is not so. In order to award plaintiffs the relief they seek, this Court must determine the content of the ERISA plan and whether the New Jersey Supreme Court case in *Perreira* applies to the subrogation provision in plaintiffs' ERISA plans. Plaintiffs' argument that it is clear that the subrogation provisions are voided by *Perreira* may very well be correct, but for the purpose of determining federal jurisdiction, this Court need only determine that the complaints seek benefits due under the terms of the plan. Because this Court finds that plaintiffs' claims seek to recoup a benefit due under the plan (that is the entire benefit amount paid as opposed to the benefit minus the subrogation loan), the Court holds that plaintiffs' claims are completely preempted

under Section 502(a)(1)(B), and that removal was proper. Plaintiffs' motion to remand will be denied.

### III. *Conclusion*

For the reasons stated herein, and this Court having found that plaintiffs' claims are within federal court jurisdiction under Section 502(a)(1)(B) of ERISA, plaintiffs' motion to remand [Docket Item 13–1] will be denied. The accompanying Order is entered.

### ORDER

This matter having come before the Court on plaintiffs' motion to remand this action to state court [Docket Item 13–1]; and this Court having reviewed the submissions and supplemental submissions on the remand issue by all parties; and this Court having heard oral argument on the remand issue on January 25, 2002 and April 4, 2002; and for the reasons in the Opinion issued this date;

IT IS this ___ day of May, 2002, hereby

**ORDERED** that plaintiffs' motion to remand this action to state court [Docket Item 13–1] be, and hereby is, *DENIED*; and

**IT IS FURTHER ORDERED** that the parties shall convene for oral argument on the remaining motion in this action, defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. [Docket Item 10–1], on **Monday, June 10, 2002 at 11:00 a.m.** before the undersigned in **Courtroom 4A.**