**Nellina SERRAIOCCO and Luigi Serraiocco, Plaintiffs,**

v.

**Aboudi Shammo SEBA, Art Khalid Seba, and SOS Service Group, Inc., Defendants,**

and

**Blue Cross/Blue Shield, Vengroff, Williams & Associates, Inc., and Citizens Insurance Company, Joinder Defendants.**

No. 02–72245.

United States District Court, E.D. Michigan, Southern Division.

Sept. 30, 2003.

Law Offices of Samuel I. Bernstein, By Michael A. Weisserman, By Samuel I. Bernstein, Farmington Hills, MI, for Plaintiffs.

Robert L. Goldenbogen, Garan Lucow Miller, P.C., Port Huron, MI, for Citizens Ins. Co.

Richard Danforth, Southfield, MI, for Defendant Seba.

David Klein, SOS Service Group, Detroit, MI, for Defendant.

David A. Belofsky, Douglas M. Belofsky, Belofsky & Belofsky, P.C., Chicago, IL, for BCBS/Vengroff.

## OPINION AND ORDER OF REMAND

ROSEN, District Judge.

### I. INTRODUCTION

Shortly after this case was removed to this Court by two of the parties designated as "Joinder Defendants,"[1] this Court issued an Order to Show Cause directing the Joinder Defendants to file a written re-

---

1. Specifically, the case was removed by Blue Cross/Blue Shield and Vengroff, Williams & Associates, Inc. The third so-called "Joinder Defendant," Citizens Insurance Company, has since filed papers with the Court stating that it neither joined in nor consented to removal. Nonetheless, for convenience, the Court continues to refer to the removing parties as the "Joinder Defendants," with the understand-

sponse addressing a number of apparent concerns with this removal. Having reviewed this response, the submissions of other parties on this issue, and the record as a whole, the Court finds that this matter must be remanded to state court as removed without a proper jurisdictional basis.

## II. *DISCUSSION*

The events and circumstances leading up to the removal of this action are recounted in the Court's initial order, and need not be repeated at length here. In addition, the Court deems it unnecessary to address each of the several concerns identified in its initial order. Rather, the Court finds that the dispositive issue at this juncture turns upon the complex and somewhat murky doctrine of "complete preemption." Accordingly, the Court turns to this inquiry.

This suit began in the Michigan courts as a tort action arising from an automobile accident, and implicated no conceivable issues of federal law. Rather, the first such issue arguably presented itself soon after the state-court Plaintiffs and Defendants reached a proposed settlement, when the Joinder Defendants apparently claimed a lien against the proceeds of this settlement. The basis for this alleged lien is that Plaintiffs have received medical benefits from an employer-sponsored health plan (the "Plan") as a result of injuries sustained in the underlying automobile accident, and that the Plan contains a provision authorizing reimbursement from third-party recoveries such as the one obtained by Plaintiffs in the state-court tort suit. The Plan's alleged lien and underlying theory of reimbursement implicate federal law by virtue of the Plan's status as governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

In response to this assertion of an alleged lien, Plaintiffs brought a motion in state court seeking to quash this lien or, alternatively, add the Joinder Defendants as parties for the purpose of declaring the rights of the various parties to the settlement proceeds. Plaintiffs' motion rests solely upon state-law grounds—specifically, that Michigan's no-fault statute does not permit the recovery of medical expenses as an element of damages in Plaintiffs' tort suit, so that there is no basis for the Plan to seek reimbursement from a recovery that does not (and, under Michigan law, cannot) encompass medical expenses. Before the state court could act upon this motion—and, thus, before the Joinder Defendants actually were joined as parties to the state-court suit—the Joinder Defendants removed the case to this Court, citing the doctrine of complete preemption.

 The Court begins its analysis with two clear and unchallenged premises. First, because the motion which triggered removal does not itself cite to federal law in any fashion, removal cannot be justified solely on the basis that the Joinder Defendants intend to appeal to federal law in their response to this motion. Rather, the "well-pleaded complaint" rule dictates that the availability of removal generally is determined by reference to the four corners of the complaint—or here, by analogy, Plaintiffs' motion to quash—and that federal *defenses* alone cannot support removal. *See Warner v. Ford Motor Co.*, 46 F.3d 531, 533–35 (6th Cir.1995); *Alexander v. UDV North America, Inc.*, 78 F.Supp.2d 614, 618 (E.D.Mich.1999). Next, there appears to be no doubt that such a federal *defense*, at least, is implicated here, where the Joinder Defendants presumably intend to argue that the Plan's

ing that this does not include Citizens Insurance.

reimbursement provision confers rights in the settlement proceeds notwithstanding any Michigan law to the contrary. The resolution of this issue seemingly would require reference to the terms of the Plan, a matter governed by federal law. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir.1998).

Nonetheless, as the Joinder Defendants acknowledge, this apparent issue of federal law warrants removal only under the "complete preemption" corollary to the "well-pleaded complaint" rule, under which a plaintiff's purported state-law claim is recharacterized as a federal claim. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). ERISA is one of the few federal statutes that triggers this doctrine of complete preemption, at least under some circumstances, and the Joinder Defendants argue that the present case implicates this doctrine. Though, as discussed below, this contention is not wholly without support in the case law, the Court elects to follow a line of decisions holding that removal is not warranted under the circumstances presented here.

While the Sixth Circuit has not yet weighed in on the specific question presented here, the Seventh Circuit and the District Courts within that Circuit have addressed this matter on a number of occasions. Not surprisingly, then, both this Court's initial show cause order and the Joinder Defendants' response focus primarily on this Seventh Circuit jurisprudence. In particular, the Joinder Defendants rely on the decisions in *Fravel v. Stankus*, 936 F.Supp. 474 (N.D.Ill.1996), and *Musinski v. Staudacher*, 928 F.Supp. 739 (N.D.Ill.1996), while arguing that the Seventh Circuit cases cited by the Court, *Speciale v. Seybold*, 147 F.3d 612 (7th Cir. 1998), and *Blackburn v. Sundstrand*, 115 F.3d 493 (7th Cir.1997), are distinguishable. Upon reviewing these and more recent cases within the Seventh Circuit, however, the Court finds that the decisions cited by the Joinder Defendants are inapposite and, in some cases, have been abrogated, while *Speciale, Blackburn*, and their progeny point unmistakably toward the conclusion that removal was improper here.

Viewed as a whole, *Blackburn, Speciale*, and a handful of recent District Court decisions within the Seventh Circuit demarcate the sometimes-fine line between "complete" and "conflict" preemption in cases involving claims by an ERISA plan to a portion of a judgment or settlement proceeds in an underlying state-court action.[2] These cases, broadly speaking, fall

2. The Seventh Circuit uses the term "conflict preemption" to refer to situations where a state law "relate[s] to" an ERISA plan, and therefore is preempted under § 514(a) of ERISA, 29 U.S.C. 1144(a), but where the preemptive reach is not so broad that a purported state-law claim must be characterized as a federal one. *See Speciale*, 147 F.3d at 615. Thus, "complete preemption" supports removal, while "conflict preemption" does not. It is important to bear in mind here that not all preemption cases will support removal. The doctrine of "complete preemption" is a removal doctrine, while other preemption doctrines refer only to the displacement of state law but do not provide a basis for removal.

"Complete preemption" applies only in the extraordinary circumstance when Congress intends, not merely to preempt a certain amount of state law, but also to transfer jurisdiction to decide the preemption question from state to federal courts. *See Metropolitan Life, supra*, 481 U.S. at 65–66, 107 S.Ct. 1542 (finding a statement of such intent in the legislative history of ERISA). Without evidence of Congress's intent to transfer jurisdiction to federal courts, there is no basis for invoking federal judicial power. *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 259 (6th Cir.1996); *Musson Theatrical Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1253 (6th Cir. 1996).

into two categories. First, where a plaintiff seeks, at least in part, to recover benefits allegedly due to him under an ERISA plan, such a claim is completely preempted under § 502(a) of ERISA, 29 U.S.C. § 1132(a), and hence supports removal. *See, e.g., Scianna v. Furlong,* 56 F.Supp.2d 1000, 1002–04 (N.D.Ill.1999). If, on the other hand, no payment is sought from the ERISA plan, and the plan merely is one of the parties at the table arguing over the distribution of proceeds, the plan has only a "conflict preemption" defense under § 514(a) of ERISA, and removal is improper. *See, e.g., Speciale,* 147 F.3d at 616–17; *Blackburn,* 115 F.3d at 495; *Varco v. Lapsis,* 172 F.Supp.2d 985 (N.D.Ill. 2001); *Traynor v. O'Neil,* 94 F.Supp.2d 1016, 1021–22 (W.D.Wis.2000).[3]

There is no question that this case falls in the latter category. Plaintiffs "are not making a claim to benefits" under the Plan; they "have already received benefits under the plan and are not seeking additional ones." *Traynor,* 94 F.Supp.2d at 1021. Because "neither the original tort action nor the petition to adjudicate adverse claims to the settlement fund sought a payment from the plan," *Blackburn,* 115 F.3d at 495, it follows that Plaintiffs' motion to quash lies outside the complete preemptive scope of § 502(a), and that the Joinder Defendants' appeal to federal law rests upon ERISA's "conflict preemption" provision, § 514(a). As noted in the Court's initial order, the Sixth Circuit has expressly recognized this distinction between § 502(a) claims for benefits, which will support removal, and ordinary § 514(a) preemption, which will not. *War-*

*ner,* 46 F.3d at 535. No action by the Plaintiffs in this case can be construed as seeking additional benefits from an ERISA plan or restitution of benefits withheld or taken back by the Plan. The Court, therefore, elects to follow the reasoning of *Blackburn* and *Speciale,* and holds that the doctrine of complete preemption does not apply here.

There are, to be sure, cases which lie at the boundary of complete and conflict preemption, and thus lend some degree of support to the arguments advanced by the Joinder Defendants here. In one of the cases cited by the Joinder Defendants, for example, the plaintiffs asserted state-law unjust enrichment claims against the defendant ERISA plans, arguing that the plans' enforcement of their subrogation provisions to claim a portion of the plaintiffs' tort recoveries was contrary to New Jersey law. *Carducci v. Aetna U.S. Healthcare,* 204 F.Supp.2d 796, 797 (D.N.J. 2002). The Court held that these claims were properly removed to federal court, reasoning that they were "actually claims for benefits under the ERISA plans" because the plaintiffs sought "to regain the whole benefit provided to them by [the plans], including those amounts paid in subrogation pursuant to the terms of the plans." *Carducci,* 204 F.Supp.2d at 803. Yet, upon careful scrutiny, *Carducci* is fully reconcilable with the distinction drawn in the Seventh Circuit cases, because the plaintiffs in that case were "seek[ing] to recoup a benefit due under the plan." *Carducci,* 204 F.Supp.2d at 803. Again, Plaintiffs seek no such recovery here.

**3.** The Sixth Circuit has held in *Warner v. Ford Motor Co., supra,* and more recently reaffirmed in *Wright v. General Motors Corp.,* 262 F.3d 610 (6th Cir.2001),

[I]n order to come within the [complete preemption] exception [to the well-pleaded complaint rule], a court must conclude that the common law or statutory claim under

state law should be characterized as a superseding ERISA action "to recover benefits due to [plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," as provided in § 1132(a)(1)(B).

*Warner v. Ford Motor Co.,* 46 F.3d at 533–34.

Neither does this Court view this case as comparable to *Arana v. Ochsner Health Plan,* 338 F.3d 433, 437–39 (5th Cir.2003), or *Coughlin v. Health Care Service Corp.,* 244 F.Supp.2d 883, 886–89 (N.D.Ill.2002). In both cases, the plaintiffs sought declaratory judgments that the defendant ERISA plan's reimbursement provision was unenforceable under state law. The Courts held that these claims fell within the subsection of § 502(a) that authorizes actions by an participant or beneficiary to "enforce his rights under the terms of the plan", or to "clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Although an analogy can be drawn between these claims and the motion to quash filed in this case, there is one important distinction as well—the plaintiffs in *Arana* and *Coughlin* brought suit for the **sole purpose** of determining the validity of an ERISA plan's reimbursement provision, while the Plan here has injected the issue of reimbursement into the tail end of a state-court tort action that the parties have agreed to settle.[4] An observation from *Blackburn* is particularly apt here:

> The "civil action" was the tort suit by the Blackburns against the other driver, which assuredly did not arise under the Constitution, treaties, or laws of the United States. Not even the most expansive reading of ERISA covers motor vehicle collisions, just because part of the recovery may inure to the benefit of a plan. The petition to apportion the fund invoked the ancillary jurisdiction of the state court, and was part of that original, non-removable action.

*Blackburn,* 115 F.3d at 494. This Court agrees, and holds that this case is not subject to removal under the doctrine of complete preemption.

### CONCLUSION

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that this case be, and hereby is, REMANDED to Macomb County Circuit Court pursuant to 28 U.S.C. § 1447(c) as removed without a proper jurisdictional basis.

---

**4.** Moreover, the Court notes that it is not at all clear that the resolution of the Plan's claim for reimbursement will even require the interpretation of the Plan. The meaning of the Plan's reimbursement provision might be wholly beyond dispute, yet this provision might never come into play because of the nature of the settlement reached by the parties to the underlying tort suit. In particular, it might turn out that, as Plaintiffs contend, Michigan law precludes the recovery of medical expenses as an element of damages, and that this characterization of the settlement proceeds defeats any reimbursement effort by the Plan. It is worth noting that the Joinder Defendants have never produced a copy of the Plan's reimbursement provision, nor have they ever addressed the merits of Plaintiffs' motion to quash.