**Carole WEST, Plaintiff,**

v.

**HEALTH NET OF THE NORTHEAST,
Defendant.**

**David Collins, Plaintiff,**

v.

**Oxford Health Plans, Defendant.**

Civil Nos. 01–5217 (JBS), 01–5237(JBS).

United States District Court,
D. New Jersey.

Aug. 7, 2003.

Donna Siegel Moffa, Trujillo, Rodriguez & Richards, LLC, Haddonfield, NJ, Frank P. Solomon, Weitz & Luxenberg, P.C., Cherry Hill, NJ, for Carole West and David Collins.

B. John Pendleton, Jr., McCarter & English, LLP, Four Gateway Center, Newark, NJ, for Health Net of the Northeast, Inc.

William J. O'Shaughnessy, McCarter & English, LLP, Newark, NJ, for Oxford Health Plans, Inc.

*OPINION*

SIMANDLE, District Judge.

Presently before the Court are two motions for summary judgment filed by defendants Health Net of the Northeast ("Health Net") and Oxford Health Plans ("Oxford Health") in these related putative class actions arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). After almost two years of motion practice in these cases, defendants seek summary judgment arguing that plaintiffs never had standing to bring their claims for compensatory relief and that plaintiffs' claims for injunctive relief became moot no later than November 2001.

The plaintiffs filed these actions after the New Jersey Supreme Court, in *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), held that health insurers who expended funds on behalf of an insured cannot seek to recover the funds from an insured's tort recovery through subrogation or reimbursement liens. Plaintiffs filed the present actions seeking compensation for the amounts that their health insurers had collected from their tort recoveries, injunctive relief declaring the subrogation and reimbursement liens void and enjoining all further collection efforts, and class relief for New Jersey insureds who were also subjected to subrogation and reimbursement liens.

This motion requires the Court to determine whether and when plaintiffs' compensatory and injunctive relief claims became moot, and whether mootness of their claims requires this Court to dismiss the entire action, including its asserted class-based relief claims. For the reasons explained herein, the Court finds (1) that neither plaintiff had standing to sue for compensatory relief because the defendants never collected any subrogation monies from them, (2) that plaintiff Collins did not have standing to sue for declaratory relief because he was not subject to a subrogation lien when he filed suit on October 4, 2001 because the lien had been abandoned on July 18, 2001, (3) that plaintiff West had standing to sue for declaratory relief when she filed suit on October 4, 2001

because she was subject to a subrogation lien, but that her claim for declaratory relief became moot on November 9, 2001 when the lien was abandoned, and (4) that the mootness of plaintiffs' claims prior to the filing of class certification motions in September, 2002, requires this Court to dismiss all claims of the uncertified putative class without prejudice to their reassertion by proper class representatives. Therefore, this Court will grant defendants' motions for summary judgment and will dismiss plaintiffs' complaints.

## I. BACKGROUND

### A. Procedural History

In January 2002, this Court consolidated, for the limited purpose of considering motions to remand and motions to dismiss, the present two actions and four other actions under the docket of the earliest-filed action, *Carducci v. Aetna U.S. Healthcare*, Civil No. 01–4675.[1] This Court has previously detailed the procedural history of these consolidated cases, which has involved the addition of three more cases.[2] *See Carducci v. Aetna U.S. Healthcare*, 247 F.Supp.2d 596 (D.N.J. 2003); *Carducci v. Aetna U.S. Healthcare*, Civ. No. 01–4675, 2002 WL 31262100 (D.N.J. Jul.24, 2002); *Carducci v. Aetna U.S. Healthcare*, 204 F.Supp.2d 796 (D.N.J.2002).

The cases were consolidated for the limited purposes of deciding their motions to remand

and motions to dismiss because the motions dealt with similar issues arising under ERISA. Each case was originally filed as a class action complaint in New Jersey Superior Court based on *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), where the New Jersey Supreme Court held that, under New Jersey's collateral source statute N.J.S.A. 2A:15–97, a health insurer who expended funds on behalf of an insured may not recoup the funds through subrogation or reimbursement liens if the insured recovers from a third-party tortfeasor. In each case, the plaintiff was insured under an employee benefit health plan which paid health benefits for plaintiff's personal injuries, but which included a subrogation and reimbursement provision allowing the plan to recoup the benefits should the plaintiff recover from a third party tortfeasor.[3]

The plaintiffs involved in the present motions filed identically-worded complaints in state court. In Count I of the West and Collins complaints, each alleges that his or her health insurance company was unjustly enriched because "Defendant required Plaintiff and the Class to reimburse Defendant for those funds expended on behalf of Plaintiff and Class members when Plaintiff and Class members recovered a judgment or settled any personal injury action against a tortfeasor."[4] In Count II, plaintiffs allege that

---

**1.** The other cases are *Levine v. United Healthcare Corp.*, Civ. No. 01–4964(JBS); *Borgurski v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 01–5339(JBS); *Edmonson v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 01–5812(JBS); and *Carducci v. Aetna U.S. Healthcare*, Civ. No. 01–4675(JBS).

**2.** The three additional cases are *Bibbs v. AmeriHealth, Inc.*, Civ. No. 02–1155(JBS); *Barbour v. Cigna Corp.*, Civ. No. 02–417(JBS), and *Rothenberg v. Aetna U.S. Healthcare*, Civ. No. 02–6122(JBS).

**3.** Throughout the pendency of this litigation, the parties have consistently referred to the defendants' claims as "liens." During oral argument on the present motions, counsel for defendants asserted that the defendants have never registered or filed a "lien," but had only asserted a contractual claims for the monies. The recovery provisions in the pertinent health plans here do not refer to a "lien," (*see* Pirtle Decl., Ex. A; Carr Decl., Ex. A.) but the defendants have referred to it as a "lien" in their communications

with plaintiff and with this Court, (*see, e.g.* Moffa Aff., Ex. C, Romano Dep. at 23:14–22; *id.*, Ex. D, West 6; Carr Decl., Ex. B).

This Court need not determine the extent of the claim at this time because it is not material to the present dispute. This Court will continue to refer to the claim as a "lien" in accordance with the practice of the parties, but makes no finding as to the extent of the claims asserted.

**4.** Count I reads, in pertinent part:

15. Pursuant to the reimbursement and/or subrogation provisions in its health insurance contract, Defendant required Plaintiff and the Class to reimburse Defendant for those funds expended on behalf of Plaintiff and Class members when Plaintiff and Class members recovered a judgment or settled any personal injury action against a tortfeasor.

16. Such requirement of reimbursement is violative of N.J.S.A. 2A:15–97 and thus it is inequitable for Defendant to retain those sums received as a result of the reimbursement and/or subrogation provisions at odds with New Jersey law.

"Defendant has taken, reserved, received, collected and converted thousands of dollars in subrogation and reimbursement payments from Plaintiff and the Class based on a false and illegal claim of right."[5] In Count III, plaintiffs seek an amendment of the terms of their health plans to comply with the *Pereira* decision.[6] In Count IV, plaintiffs seek a declaratory judgment that defendants be ordered to cease all collection efforts on reimbursement and subrogation liens.

Plaintiffs, thus, seek three types of relief: (1) compensatory relief "for damages in the amount of the reimbursements paid by Plaintiff to Defendant for payments made by Defendant to third parties on behalf of Plaintiff, together with interest thereon," (2) injunctive relief declaring all asserted reimbursement and subrogation liens void and enjoining further collection efforts by Defendants, and (3) class relief in the form of compensatory and injunctive relief. (*See* Complaints, Prayer for Relief.)

After hearing oral argument on the remand motions of the plaintiffs in January and April 2002, the Court denied the motions in a May 28, 2002 decision, finding that the monies that plaintiffs alleged were taken by the defendant insurers pursuant to the subrogation clauses in their employee benefit health-

care contracts were "benefits due" under ERISA section 502(a)(1)(B), meaning that the state law unjust enrichment claims were completely preempted by federal law and were properly removed to federal court. *See Carducci, et al. v. Aetna U.S. Healthcare,* 204 F.Supp.2d 796 (D.N.J.2002).[7] The Court explained that the relief was for "benefits due" because the "classification of the monies sought by plaintiff was addressed at length in oral argument," *id.* at 801, and that "[e]ssentially plaintiffs seek to regain the whole benefit provided to them by defendants, including those amounts paid in subrogation pursuant to the terms of the plans," *id.* at 803.

In September, 2002, the consolidated defendants, including Health Net and Oxford Health, filed a joint motion to dismiss the Complaint, asserting that plaintiffs' complaints should be dismissed because the claims were completely preempted by ERISA § 502(a)(1)(B), were conflict preempted by ERISA § 514(a), and were barred by the voluntary payment doctrine, the law regarding the retrospective application of court decisions, the standing doctrine or the mootness doctrine. The Court denied the motion to dismiss in a March 4, 2003

---

17. As Plaintiff and the Class members have been injured by Defendant's unjust enrichment, Plaintiff and the class are entitled to damages, including, but not limited to restitution and disgorgement of Defendant's ill-gotten gains.
(Complaints ¶¶ 15–17.)

5. Count II reads, in pertinent part:
19. Defendant has taken, reserved, received, collected and converted thousands of dollars in subrogation and reimbursement payments from Plaintiff and the Class based on a false and illegal claim of right. Defendant has also charged, collected, converted and unjustly received interest on such illegally collected payments.
20. Plaintiff and the members of the Class have been deprived of the money and the use of such money that Defendant has taken, charged, converted, used, and received under its false and illegal claim of right, and have suffered damages as a result.
(Complaints ¶¶ 19–20.)

6. Count III reads, in pertinent part:
23. The subrogation and/or reimbursement provisions of Defendant's insurance policies as they apply to Plaintiff and the Class are in conflict with and repugnant to New Jersey's Collat-

eral Source Statute, N.J.S.A. 2A:15–97, and we so at the time these policies were issued.
24. Employing these insurance policy provisions, which are at variance with the statutory standard, Defendant wrongfully has asserted a right to collect and/or has collected from Plaintiff and the Class reimbursement for healthcare costs it expended on behalf of these insureds, unlawfully depriving Plaintiff and the Class of the proceeds of their recoveries from third-party tortfeasors.
25. The subrogation and/or reimbursement provisions of Defendant's insurance policies as they apply to Plaintiff and the Class, being automatically amended by operation of law to conform to the governing statute, are null and void and of no force and effect, and Defendant was therefore without right or authority to demand or retain any reimbursement from Plaintiff and the Class.
(Complaints ¶¶ 23–25.)

7. Plaintiffs sought leave to file an interlocutory appeal of this decision, which this Court denied on July 24, 2002. *See Carducci v. Aetna U.S. Healthcare,* Civil No. 01–4675, 2002 WL 31262100 (D.N.J. Jul.24, 2002).

Opinion and Order.[8]

In the motion to dismiss papers, the present defendants, Health Net and Oxford Health, argued that "Collins and West lack standing to pursue their compensatory claims (Counts I through III of their Complaints) because they have not suffered an 'injury in fact' ... neither alleges that he or she ever made a payment pursuant to those clauses." (Defs.' Mtn. to Dismiss Br. at 3.) Defendants then invited plaintiffs to show that they were "deprived of money by defendants related to subrogation and/or reimbursement clauses," (id. at 2 n. 1), but plaintiffs Collins and West did not respond to the standing argument in their submissions. The Court, therefore, "accept[ing] as true all material allegations of the complaint," *Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988), accepted as true plaintiffs' allegations in their Complaints that the defendants had "taken, reserved, received, collected and converted thousands of dollars in subrogation and reimbursement payments from Plaintiff and the Class based on a false and illegal claim of right," (Complaints ¶ 19), and denied the motion to dismiss.[9]

8. On March 4, 2003, this Court also decided defendant Cigna Corp.'s motion to dismiss and compel arbitration in *Barbour v. Cigna Corp.*, Civil No. 02–417(JBS), which it filed concurrently with the consolidated defendants' motions to dismiss. The Court granted the motion and compelled the *Barbour* parties to arbitrate their dispute in accordance with the health plan's arbitration provision.

9. In the March 4, 2003 Opinion, this Court also considered a motion for summary judgment that the defendant in *Bibbs v. AmeriHealth, Inc.*, Civil No. 02–1155(JBS), filed concurrently with its motion to dismiss papers. There, defendant AmeriHealth argued that summary judgment should be granted in its favor because the *Bibbs* plaintiff did not have standing to make a claim for compensatory damages for "amounts taken pursuant to unlawful subrogation liens" because he never had amounts taken pursuant to the lien, and could not pursue claims for prospective relief barring the insurer from asserting subrogation and reimbursement liens in the future because such claims were mooted by the defendant's unequivocal withdrawal of its liens. The Court agreed with defendant AmeriHealth and granted its motion for summary judgment. *Carducci*, 247 F.Supp.2d at 622–25.

10. On March 18, 2003, the consolidated defendants filed a motion for certification for interloc-

Defendants Health Net and Oxford Health then filed the present motions for summary judgment on May 14, 2003, arguing that there is no question that plaintiffs *West* and *Collins* are not owed "benefits due" under their plans because they never paid any monies pursuant to the reimbursement and subrogation liens and that there is no question that they do not need injunctive relief because defendants Health Net and Oxford Health have abandoned the liens.[10] The Court will consider these standing and mootness arguments herein and will grant the motions for summary judgment.[11]

### B. Facts Specific to West v. Health Net

As will be seen, and contrary to the allegations of her own Complaint, plaintiff Carole West never had any money taken by Health Net or its agent by way of subrogation upon her personal injury recovery or otherwise. Plaintiff Carole West was injured on August 1, 1998, (Pirtle Decl. ¶ 2), and, as a beneficiary of Health Net's Guardian & Physician Health Services Healthcare Solutions Plan, her covered medical services were paid by Health Net, (Stmt. of Undisputed Facts ¶ 1). Her Health Net plan included a "right to

utory appeal of this Court's March 4, 2003 Opinion and Order denying their motion to dismiss. On April 7, 2003, the consolidated plaintiffs filed a crossmotion for certification for an interlocutory appeal of this Court's May 28, 2003 Opinion and Order denying their motion for remand. The Court held oral argument on both motions on April 24, 2003 and reserved decision regarding interlocutory appeal pending the present motions for summary judgment.

11. In response to the motions for summary judgment, plaintiffs filed Rule 56(f) Affidavits requesting additional time for discovery. On May 22, 2003, this Court granted plaintiffs' request for discovery, provided it was "specifically tailored to lead to admissible evidence on the mootness and standing issues presently before this Court," namely "whether defendants stopped efforts to assert and collect such liens after *Perreira* and before the present Complaints were filed." (5/22/03 Order.)

Plaintiffs have completed the additional discovery; the parties have filed supplemental submissions with the Court; and the Court heard argument on the motions for summary judgment on July 17, 2003. The present two motions are thus ready for determination.

recovery" clause which provided Health Net with subrogation and reimbursement rights.[12] Health Net did not pursue these claims directly, but contracted with collection agent, Primax Recoveries, Inc.[13] (Moffa Aff., Ex. A, Pirtle Dep. at 15:3–17:11.) Prior to the *Perreira* decision on June 26, 2001, Health Net's "general policy regarding the assertion of subrogation rights and liens" was to send "anything relating to subrogation" to Primax with directions to "pursue the right for recoveries." (Moffa Aff., Ex. A, Pirtle Dep. at 15:3–17:11.)

After the *Perreira* decision, Health Net had "continuing discussions" with Primax about the *Perreira* decision and its effect on their collection efforts.[14] (Moffa Aff., Ex. C, Romano Dep. at 42:8–43:18.) Initially Health Net "needed time to discuss it and confer with their outside counsel," (*id.* at 44:25–45:11), and instructed Primax "to continue pursuit of active cases until such time as they reached a decision on how to handle the matter," (*id.* at 45:7–11).[15]

Ms. West's attorney was sent a "Notice of Lien" on April 17, 2001, before the *Perreira* decision was issued.[16] (*Id.* at 24:1–6.) There is no record that she corresponded with Primax or Health Net about the Notice. Then, following *Perreira*, on October 4, 2001, plaintiff Carole West filed the present action.[17] On October 18, 2001, Leean Pirtle, Supervisor of Claims Recovery at Health Net, requested that Primax copy the West file and send Health Net the original file documents. (Moffa Aff., Ex. D at 43.) She also instructed Primax to "[p]ut this file on hold until further direction from [Health Net]." (*Id.*; Moffa Aff., Ex. C, Romano Dep. at 35:23–36:25.) On November 9, 2001, Ms. West's

12. The provision stated, in pertinent part:

 We shall require the return of health benefits paid or the reasonable cash value of all services and supplies arranged or provided for an Illness or Injury, up to the amount a Covered Person receives for that Illness or Injury through:

 a) a third party settlement;
 b) a satisfied judgment; or
 c) other means.

 We will only require such payment when the amounts received through such settlement, judgment or otherwise, are specifically identified as amounts paid for health benefits for which We have paid benefits or arranged or provided services or supplies.

 (Pirtle Decl., Ex. A.)

13. Primax began serving as Health Net's collection agent on September 18, 1998, (Pirtle Decl. ¶ 3), and continued its contractual relationship with Health Net until February 10, 2003, (Moffa Aff., Ex. C, Romano Dep. at 18:15–23).

14. Primax's general collection process involved the following. *First,* Primax would "filter" the claims to see whether the involved injuries may have resulted from the tort of a third party. (Moffa Aff., Ex. C, Romano Dep. at 19:2–10.) Then, Primax would try to confirm its suspicions by sending questionnaires to insureds asking for "information regarding the circumstances surrounding the injury." (*Id.* at 19:14–22.) Primax generally sent three questionnaires over the course of ninety days, and then followed-up with phone calls. (*Id.* at 19:20–22.) If Primax still had not heard from the insured, it would conduct an "ISO Claim Search" to determine if a liability insurer had filed a claim for the incident, and then contact the insurer or its indicated attorney. (*Id.* at 22:9–22.) Finally, if its investigation

showed that the claim was one for subrogation, "the file would then be activated or taken out of the investigation stage" and a notice of lien would be generated and sent to the insured. (*Id.* at 23:14–22.)

15. Leean Pirtle, Supervisor of Claims Recovery for Health Net, initially certified that "as a direct result" of the *Perreira* decision and the July 5th bulletin, Health Net "ceased enforcement of the reimbursement/subrogation provisions" in Plaintiff's plan and there have been and will be "no further efforts to obtain reimbursement from Ms. West." (Pirtle Decl. ¶¶ 4–5.) During her deposition, however, she admitted that she does not know how soon after the *Perreira* decision the collection efforts ceased. (Moffa Aff., Ex. A, Pirtle Dep. at 35:6–38:23.)

16. Mr. Romano testified that he assumes the general collection process was followed in Ms. West's case because her file shows that a Notice of Lien was sent out and that Primax received correspondence from attorneys involved in her personal injury case. (Moffa Aff., Ex. C, Romano Dep. at 24:9–25:16; *id.,* Ex. D at West 5–6; Pirtle Decl., Ex. B.) However, because questionnaires were sent out electronically and phone calls are not recorded, their files do not contain records of uncompleted questionnaires or follow-up phone calls. (Moffa Aff., Ex. C, Romano Dep. at 20:21–25.) As a result, plaintiff West's file does not contain a completed questionnaire or show follow-up telephone calls, (*id.* at 21:1–24.)

17. Plaintiff West filed her Class Action Complaint in New Jersey Superior Court, Law Division, Essex County on October 4, 2001. The action was removed to this Court on November 8, 2001.

file at Primax was closed "at the client's request due to New Jersey laws." (*Id.* at 26:10–11; 39:2–13; Moffa Aff., Ex. D at 45.) The lien was abandoned when the file was closed on November 9th, (Moffa Aff., Romano Dep. at 40:19–21), with no payments ever made by West, (*id.* at 26:4–11).

Plaintiff was likely not given notice in November 2001 that the lien had been abandoned, (*id.* at 40:22–41:4), because the file was closed in Primax's Client Services Department where the employees are not required to write lien-withdrawal letters, (*id.* at 41:5–22). On April 28, 2003, however, Leean Pirtle of Health Net made clear that "HNNJ [Health Net New Jersey] will not pursue any reimbursement/subrogation claim against Ms. West." (Pirtle Decl. ¶ 5.)

### C. *Facts Specific to Collins v. Oxford Health*

Like Carole West above, plaintiff David Collins never actually lost any health care benefits, nor did he ever repay defendant for these benefits, contrary to his own allegations, as plaintiff now admits. Mr. Collins was injured in an automobile accident on May 20, 1998, (Carr Decl. ¶ 2), and, as a beneficiary of Oxford Health's New Jersey Small Group Freedom Plan, his medical expenses were paid by Oxford Health, (Stmt. of Facts ¶ 1; Solomon Aff., Ex. B.) His Oxford Health plan included the subrogation and reimbursement rights, which Oxford Health

pursued through collection agent, Healthcare Recoveries, Inc. ("HRI").[18] (Carr Decl. ¶ 3; *Id.*, Ex. A.)

Prior to the June 26, 2001 *Perreira* decision, Oxford Health allowed HRI to pursue subrogation claims as it wished. (Solomon Aff., Ex. A, Widomski Dep. at 14:15–25.) Plaintiff Collins, as a result, received letters from HRI on October 16, 2000, December 12, 2000, February 2, 2001, April 17, 2001, and May 4, 2001, requesting information about his injuries and his lawsuit. (Carr Decl., Ex. B; Moffa Decl., Ex. 2.)

By June 28, 2001, Oxford Health and HRI began to discuss the effects of the June 26, 2001 *Perreira* decision on their collection efforts. (Solomon Aff., Ex. A, Widomski Dep. at 15:21–25; *id.*, Ex. A at Oxford 0001.) Oxford Health initially "needed to digest the decision and how to proceed," (Solomon Aff., Ex. A, Widomski Dep. at 27:9–13,) but by July 17, 2001, it had "determined that we were unable to pursue, you know, subrogation or most subrogation for the State of New Jersey," (*id.* at 26:19–27:2). As a result, Gail Kahl, Director Oxford Health's corporate compliance department authored a July 17, 2001 internal memorandum explaining that *Perreira* and a July 5, 2001 Bulletin issued by the New Jersey Department of Insurance[19] required that all subrogation collection activities cease. (Widomski Decl., Ex. A at 1.)[20] On July 24, 2001, Mr. Widom-

---

18. The "right to recovery—third party liability" provision stated, in pertinent part:
OHI [Oxford Health Insurance] shall require the return of health benefits paid for an Illness or Injury, up to the amount a Covered Person receives for that Illness or Injury through:
a) a third party settlement;
b) a satisfied judgment; or
c) other means.
OHI will only require such payment when the amounts received through such settlement, judgment or otherwise, are specifically identified as amounts paid for health benefits for which OHI has paid benefits.
(Carr Decl., Ex. A.) HRI serviced Oxford Health's claims from 1998 through December 31, 2001. (*Id.*, ¶ 3.)

19. The New Jersey Department of Insurance Bulletin No. 01–11, issued on July 5, 2001, states in pertinent part:
Health carriers are ... directed immediately to cease all subrogation and recovery efforts

against persons covered by group or individual contracts or policies issued in New Jersey ... regardless of whether these contracts include subrogation or reimbursement provisions.

20. The Memorandum stated, in pertinent part:
This Bulletin is a warning to all carriers that they must immediately cease all subrogation and recovery activity even though they may have approved language in their documents specifically allowing these actions.
Effective Date: The Bulletin is dated **July 5, 2001** and is effective as of that date. It affects all individual and group products.
Summary/Analysis. Pursuant to a recent court decision, it is now illegal for insurers and HMOs to engage in subrogation and/or recovery. The Department of Banking and Insurance as well as the Department of Health and Senior Services will be amending their rules to comply with the ruling.
Going forward, no contract or certificate will be approved with such language. *Any such lan-*

ski, Project Manager for healthcare-related projects at Oxford Health, sent an email to Bart Thompson at HRI to confirm that HRI had stopped its collection efforts.[21] (Widomski Decl., Ex. A at 4; Solomon Aff., Ex. A, Widomski Dep. at 24:20 27:14.) Bart Thompson replied that HRI had stopped collection efforts on all cases except for those it believed were exempt from the *Perreira* decision.[22] (Widomski Decl., Ex. A at 3.) In July, 2001, HRI closed its files and sent letters to active Oxford files to notify the insureds that HRI would no longer be pursuing subrogation rights for Oxford. (Zoeller Decl. ¶ 3, *Id.*, Ex. A.)[23]

Plaintiff Collins' file was not closed as a direct result of *Perreira*, but was closed on July 18, 2001 because "neither Mr. Collins nor his counsel had supplied HRI with sufficient information." (Zoeller Decl. ¶ 3.)[24] Mr. Collins was not sent a letter notifying him of the closing because he had never provided sufficient information to have his case considered active,[25] (*Id.*), but the lien was in fact abandoned against Collins on July 18, 2001.

On October 4, 2001, Mr. Collins filed his Class Action Complaint in state court.[26] On November 1, 2001, Mr. Widomski sent an email to Antonia Mudd at HRI inquiring about Mr. Collins' file. (Solomon Aff., Ex. A at Oxford 00012.) Antonia Mudd assured him that the file had been closed on July 18, 2001 with no monies recovered.[27] (*Id.*) It is undisputed that HRI and Oxford Health never collected any subrogation monies from Mr.

*guage in existing contracts or certificates is unenforceable.*
> Impact for Oxford/Action Steps
> All individuals engaged in this activity within Oxford must be notified to immediately cease this activity in New Jersey. Legal (Litigation) must be made aware of this Bulletin. Additionally, *the individuals within Legal and Operations who handle our relationship with HealthCare Recoveries must reach-out to this vendor.*

(Widomski Decl., Ex. A at 1) (emphasis in original).

**21.** The email read:
> I wanted to confirm that all subrogation issues have been stopped in New Jersey since a court decision has been made not favorable to the *Health Insurance Industry*.... Thanks, Rich

(Widomski Decl., Ex. A at 4.)

**22.** The email read:
> I asked Joseph Willis, our Senior Staff Attorney, if we had stopped pursuing all files in New Jersey. Joseph responded that we haven't stopped all subro in NJ for Oxford or for any other client. We're continuing to pursue all file types for self funded ERISA, FEHBA, Medicare & Medicaid. For insured health plans like Oxford, *we're continuing to pursue* WC and some limited opportunities for Premises and Auto claims....
> Please let me know if this is the information you are looking for, and if you have any questions, please call me ...

(Widomski Decl., Ex. A at 3.)

**23.** HRI remained interested in pursuing subrogation for Oxford Health. In August 2001, Patrick B. McGinnis, Chairman and CEO of HRI, wrote to Daniel Gregoire, Executive Vice President of Oxford Health's legal department to encourage Oxford Health to continue to utilize its services for the cases not subject to *Perreira* and to inform

Oxford Health that it sought to reverse the *Perreira* holding through legislative or judicial efforts. (Solomon Aff., Ex. A at Oxford 00010–00011.)

**24.** Three telephone calls were placed to plaintiff Collins' attorney between June 29, 2001 and July 18, 2001 because HRI "understood that the *Perreira* decision did not affect Oxford's right to obtain reimbursement from members (through coordination of benefits) who had been injured in automobile accidents and elected PIP coverage as primary on his automobile insurance policy," (*id.* ¶ 5), and understood that plaintiff Collins had been injured in an automobile accident, (*id.* ¶¶ 1–2, 5.) The HRI representative thus made the three calls to determine whether plaintiff had elected his PIP coverage as primary, but when plaintiff's attorney failed to provide the information, Mr. Collins' file was closed for "lack of cooperation" on July 18, 2001. (Solomon Aff., Ex. A at Oxford 00012.)

**25.** *Mr. Collins asserts that he first learned that* the lien was revoked when he received the April 4, 2003 declaration of Paul Carr stating that "Oxford will not pursue any reimbursement/ subrogation claim against Mr. Collins." (Pl.'s Supp. Br. at 6).

**26.** Plaintiff's complaint was removed to this Court on November 9, 2001.

**27.** The email stated:
> It looks like this member was injured in an MVA back in 1998. HRI exhausted all efforts to get this member and his attorney to respond. All necessary letters were sent. The file was rejected for lack of member cooperation on July 18, 2001. HRI never recovered any money.

(Solomon Aff., Ex. A at Oxford 00012.)

Collins before or after *Perreira.* (Stmt. of Facts ¶ 5.)

## II. *DISCUSSION*

Defendants Health Net and Oxford Health argue that this Court should grant summary judgment on all claims in plaintiffs' complaints because (1) plaintiffs' individual claims fail on standing and mootness grounds, and (2) plaintiffs' class claims fail because the putative class action lacks a named representative plaintiff with a justiciable claim.

This Court finds, for the following reasons, that summary judgment is appropriate on all of plaintiffs' claims. First, the Court finds that summary judgment must be granted on plaintiffs' individual claims because plaintiffs Collins and West never had a claim for compensatory relief because they never were denied benefits due since subrogation monies were never collected from their recoveries and because their claims for declaratory relief were mooted in July 2001 and November 2001, respectively, when the defendants abandoned the liens. Second, the Court finds that plaintiffs' class-based relief claims must be dismissed because plaintiffs' claims became moot before they filed a class certification motion. Thus, this Court will dismiss plaintiffs' individual claims with prejudice and will dismiss the claims of the putative class without prejudice to their reassertion by a named plaintiff who has a justiciable claim.

### A. *Summary Judgment Standard*

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).[28]

### B. *Individual Claims of Plaintiffs West and Collins*

With this action, plaintiffs West and Collins have sought individual compensatory damages "including, but not limited to restitution and disgorgement of Defendant's ill-gotten gains," (Complaints ¶ 17), "in the amount of the reimbursements paid by Plaintiff to Defendant for payments made by Defendant to third parties on behalf of Plaintiff," (*id.,* Prayer for Relief), and individual declaratory relief finding that the asserted reimbursement and subrogation liens are void and enjoining further collection efforts by Defendants, (*id.*). Plaintiffs' claims for individual compensatory and declaratory relief fail on grounds of standing and mootness because plaintiffs never paid amounts as reimbursement to defendants and because defendants have abandoned all further collection efforts on the liens, acknowledging that they are void under *Perreira.*

### (1) *Standing*

■ Defendants Health Net and Oxford Health first argue that plaintiffs West and Collins did not have standing to pursue the present lawsuit. A plaintiff must establish constitutional standing to pursue an action by showing (1) that he suffered an injury in fact, (2) that the injury was caused by the named

**28.** The moving party always bears the initial burden of showing no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. The non-moving party "may not rest upon the mere allegations or denials of" its pleading to show a genuine issue exists and must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Fed.R.Civ.P. 56(e); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985).

defendant or at least "fairly traceable to the challenged action of the defendant," and (3) that a favorable decision by the court would likely redress his injury. *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 561 (3d Cir.2002) (quoting *Bennett v. Spear,* 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). An injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A "redressable" injury is one which is "likely to be redressed by the requested relief." *Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).

■ A "plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs.,* 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *see also Lewis v. Casey,* 518 U.S. 343, 358, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (explaining that "standing is not dispensed in gross"); *Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (finding plaintiff had standing to pursue damages, but lacked standing to pursue injunctive relief). The Supreme Court explained that "nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Lewis,* 518 U.S. at 358 n. 6, 116 S.Ct. 2174 (citing *Blum v. Yaretsky,* 457 U.S. 991, 999, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Thus, when a plaintiff asserts claims for both compensatory damages and for injunctive relief, as plaintiffs have done here, the plaintiff must have been subject to injury redressable by both compensatory and injunctive relief.[29]

### (a) *Compensatory relief*

■ Here, there is no question that plaintiffs West and Collins do not have standing, and never did have standing, to assert claims for compensatory relief "in the amount of the reimbursements paid by Plaintiff to Defendant for payments made by Defendant to third parties on behalf of Plaintiff." This is so because *plaintiffs West and Collins never paid anything to defendants Health Net and Oxford Health pursuant to the reimbursement and subrogation provisions in their health plans.* Plaintiffs admit that "[i]t is **undisputed** that Ms. West never reimbursed Health Net for any monies for benefits paid by Health Net on his [sic] behalf," (West Stmt. of Facts ¶ 3) (emphasis in original), and that "[i]t is **undisputed** that Collins never reimbursed Oxford for any monies for benefits paid by Oxford on his behalf," (Collins Stmt. of Facts ¶ 3) (emphasis in original). Plaintiffs argue, though, that they still should be found to have standing to pursue compensatory claims because they were subject to liens in October 2001 when they filed their suits. This Court will consider whether plaintiffs actually were subject to liens when suit was filed *infra.* It need not do so here because it is immaterial to the determination of whether plaintiffs have standing to assert compensatory claims. Plaintiffs never paid monies to defendants, so plaintiffs never had a claim for compensation for benefits due from defendants. This Court will dismiss the compensatory relief claims asserted by the individual plaintiffs West and Collins for lack of standing.[30]

---

**29.** This Court notes that in some situations, the inquiry regarding standing for compensatory damages becomes "tangential" because the plaintiff has standing to at least seek nominal damages even if no compensable harm was suffered. Here, however, plaintiffs have not sought nominal damages, and have not asserted that they were deprived of an "absolute right" that is actionable for nominal damages "without proof of actual injury." *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

**30.** This Court notes that plaintiffs repeatedly represented in their Complaints that they paid monies to defendants pursuant to the liens. This was not true. In accordance with Fed.R.Civ.P. 11, this Court relied on their representations because, by signing the Complaint, plaintiffs' counsel certified that "the allegations and other factual contentions have evidentiary support." *See* Fed.R.Civ.P. 11(b)(3). Based on these representations that plaintiffs actually paid defendants, so were owed "benefits due," this Court has decided a remand motion, a motion for inter-

### (b) *Injunctive claims of plaintiff Collins*

█ There is also no question that plaintiff Collins lacked standing, at the time his Complaint was filed on October 4, 2001, to pursue claims for injunctive relief. By July 18, 2001, any claim by defendant Oxford Health on plaintiff Collins' recovery was released and all collection efforts were abandoned. (*See* Solomon Aff., Ex. A at Oxford 00012.)

The record shows that by June 28, 2001, Oxford Health had begun to determine the impact that the June 26, 2001 *Perreira* decision had on its pending accounts. (Solomon Aff., Ex. A, Widomski Dep. at 15:21–24; *id.*, Ex. A at Oxford 0001.) Initially, the company needed time to "digest the decision and how to proceed," (*id.*, Ex. A, Widomski Dep. at 27:9–13), but by July 17, 2001, the Oxford Health "legal team … determined that we were unable to pursue … most subrogation for the State of New Jersey," (*id.* at 26:19–27:2), and Gail Kahl, Oxford Health's Director of Corporate Compliance, issued a memorandum "warning … all carriers that they must immediately cease all subrogation and recovery activity." (Widomski Decl., Ex. A at 1.) A week later, on July 24, 2001, Oxford Health's subrogation project manager, Richard Widomski, followed up with Oxford Health's collection agent HRI to "confirm that all subrogation issues have been stopped in New Jersey," (*id.* at 4), and was told on July 25, 2001 that HRI had stopped all subrogation efforts, except for those cases exempted from the *Perreira* decision, (*id.* at 3). By July 12, 2001 and September 6, 2001, HRI had notified some Oxford members "that we have closed our file in lite (sic) of the recent Supreme Court ruling in New Jersey only allowing liens to be asserted by Self–Funded ERISA plans…. [We] have withdrawn our subrogation lien in regards to the above captioned insured." (*See* Zoeller Decl. ¶ 3, Ex. A).

It is undisputed that plaintiff Collins was not sent a letter to inform him that his file had been closed and that the lien had been withdrawn. However, it is also undisputed that his file was closed on July 18, 2001 "for lack of cooperation." (Solomon Aff., Ex. A at Oxford 00012.) Charlene Zoeller, then Vice-President of HRI, certified that plaintiff Collins did not receive a letter to inform him that the lien was withdrawn because neither he, nor his counsel, had provided the information needed for his file to be considered an "active" case for which notification of the case closing was necessary. (Zoeller Decl. ¶ 5.)

Plaintiff argues that he first learned that the lien was withdrawn in an April 4, 2003 affidavit filed with this Court, (Carr Decl. ¶ 5), so that this Court should find that the lien was active until April 2003. All evidence, however, shows that the lien was in fact withdrawn in July 2001 before plaintiff filed this action. Plaintiff may have thought that the lien was still pending in October 2001, or even in April 2003, but it was not. Plaintiff's file, and the files of other New Jersey Oxford Health members were closed in July 2001 and the void subrogation liens were withdrawn. Had plaintiff's counsel written to Oxford Health or HRI at that time and inquired about the status of the lien, he likely would have learned that it had been withdrawn. Counsel for another member requested such information and was told in July, 2001, that "[s]ince our last conversation, we have been instructed by counsel not to pursue recovery on this file on behalf of Oxford. Accordingly, our file is now closed." (Zoeller Decl., Ex. A.) Instead, plaintiff filed this suit without standing to do so. There was no injunctive relief that this Court could offer Mr. Collins; he was under no lien that needed to be withdrawn. Thus, this Court will dismiss plaintiff Collins' individual claims for injunctive relief for lack of standing.

### (c) *Injunctive claims of plaintiff West*

█ Plaintiff West, on the other hand, had standing on October 4, 2001, the date that her Complaint was filed, to pursue claims for injunctive relief. The record indicates that Health Net's collection agent, Primax, did

---

locutory appeal, and a motion to dismiss. This Court has authority to issue an order to show cause why plaintiffs' counsel have not violated Fed.R.Civ.P. 11 by signing these complaints, *see* Fed.R.Civ.P. 11(c)(1)(B), but will refrain from doing so here.

not place plaintiff West's file on hold until October 18, 2001, (Moffa Aff., Ex. D at 43), and did not close the file and abandon the lien "due to New Jersey laws" until November 9, 2001, (*id.* at 45; Moffa Aff. Ex. C, Romano Dep. at 40:19–21). Thus, the lien was active on October 4, 2001 and plaintiff West had standing on that date to file her complaint seeking a injunctive relief declaring that the lien was void.

### (2) *Mootness of West's injunctive claims*

■ Although plaintiff West had standing on October 4, 2001 to file claims for injunctive relief, this Court finds that her claims became moot on November 9, 2001 when Health Net withdrew its subrogation and reimbursement liens. This Court will thus dismiss plaintiff West's injunctive claims for mootness.

■ A district court only has authority to consider actual, ongoing "cases and controversies," *Khodara Env'l, Inc. v. Beckman,* 237 F.3d 186, 192–93 (3d Cir.2001), so that when "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *County of Morris v. Nationalist Movement,* 273 F.3d 527, 533 (3d Cir.2001). Voluntary cessation of challenged conduct only moots a case, though, if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693; *Phillips v. Pa. Higher Educ. Assis. Agency,* 657 F.2d 554, 569 (3d Cir. 1981).

■ Defendant Health Net argues that West no longer has a stake in a suit which seeks a judgment:

enjoining Defendant from taking actions to collect reimbursement of benefits paid

from recoveries obtained from third party tortfeasors pursuant to the reimbursement and subrogation provisions contained in its contracts of insurance and requiring it to conform its contracts to New Jersey law,

and a declaration:

that all liens asserted against proceeds received from third party tortfeasors in settlements or judgments pursuant to the reimbursement and subrogation provisions in Defendant's contracts are void and unenforceable,

(*see* Complaint), because Health Net has irrevocably released any reimbursement and subrogation claims against plaintiff West's recoveries, acknowledging they are void "due to New Jersey laws," (*see* Moffa Aff., Ex. D at 45).[31]

Here, the record is clear that the lien against plaintiff West, which she sought injunctive relief to remove, was removed by defendant Health Net in November 2001. Health Net had engaged in "continuing discussions" with Primax about the *Perreira* decision, and had allowed Primax to continue pursuing active cases until November 2001, (Moffa Aff., Ex. C, Romano Dep. at 42:8–43:18, 45:7–11), but by November 9, 2001, it closed its file on plaintiff West and withdrew the lien, (*id.* at 40:19–21; Moffa Aff., Ex. D at 45). It has since withdrawn all liens as required by New Jersey Administrative Code section 11:4–42.10, which provides:

(a) No policy or certificate providing group health insurance shall limit or exclude health benefits as the result of the covered person's sustaining a loss attributable to the actions of a third party.

(b) Insurers shall file with the Commissioner no later than December 31, 2002, endorsements that remove any subrogation and third party recovery provisions contained in previously filed contract, policy or certificate forms.

---

**31.** Defendant Oxford Health has also argued the mootness of plaintiff Collins' claims. Based on the reasoning expressed *supra* as to the reasons plaintiff Collins lacked standing to pursue his claims on the date of filing, this Court also finds that his claims were moot on the date of filing. By October 4, 2001, Oxford Health had unequivocally revoked its subrogation and reimbursement liens and had not collected any monies from plaintiff Collins.

Health Net has also unequivocally represented to this Court that it has withdrawn any claims against plaintiff West's recovery and will never pursue claims against her tort recovery for the August 1, 1998 accident. (Pirtle Decl. ¶ 5.)

The Court finds that, with these facts, it can be "said with assurance" that there is no reasonable expectation that Health Net will reassert a subrogation or reimbursement claim against plaintiff West's recovery from her August 1, 1998 accident. Health Net withdrew the lien on November 9, 2001 and has consistently represented to this Court that its withdrawal was unequivocal and complete. Plaintiff was never required to pay any amounts because of the lien, and while she asserts that she bore "incidental costs" associated with the lien, she has not presented any proof or explanation of these costs. Instead, the record shows that on November 9, 2001, Health Net completely and irrevocably withdrew its lien against plaintiff's tort recovery and eradicated her need to seek injunctive relief ordering such a withdrawal. As a result, this Court finds that plaintiff West's individual claims for injunctive relief became moot on November 9, 2001, and this Court will dismiss such claims for mootness.

### C. *Class Claims*

 Plaintiffs West and Collins have also asserted claims on behalf of a putative class including:

all persons throughout New Jersey who are or were insureds of Defendant from approximately 1993 to the date of certification of the Class and who, pursuant to the reimbursement and/or subrogation provisions in their health insurance contract, have paid, or are obligated to pay, reimbursement to Defendant for healthcare payments made for injury and illness caused by a third party, from monies recovered from that third party.

(Complaints ¶ 6.) Defendants also seek dismissal of these class claims on mootness grounds.

 The Third Circuit has explained three separate mootness rules which apply depending on the stage of a class action that the named plaintiffs claims become moot. *Lusardi v. Xerox Corp.*, 975 F.2d 964 (3d Cir.1992). First, if the claims of the named plaintiffs become moot when the class certification motion has not yet been filed in a putative class action, the Court must dismiss the entire action, including its class claims, because "there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution." *Id.* at 974–75. Second, if the claims of the named plaintiffs become moot after a class certification motion has been filed, but before the class has been certified or while the certification is on appeal, the Court should not dismiss the action until the certification issues are decided because the named plaintiffs retain an interest in the certification issues and may represent the class during the pendency of the motion. *Id.* at 975. If the class certification motion is denied, then the entire class action "on the merits must be dismissed as moot." *Id.* at 976. Third, if the claims of the named plaintiffs become moot after the class is certified, the Court must not dismiss the action because at that time, the "class [has] acquire[d] a legal status separate from the interest asserted by its named plaintiff," as "the stake of other class members is attributed to the class representative." *Id.* at 974.

Here, the Court has found, *infra*, that the individual claims of named plaintiff Collins became moot on July 18, 2001 and the individual claims of named plaintiff West became moot on November 9, 2001. Plaintiffs Collins and West did not file class certification motions until at least ten months later, on September 6, 2002 and September 9, 2002, respectively.[32] The facts of this case, thus, fall squarely within the first scenario explained above where the claims of the named plaintiffs become moot before a class certification

---

**32.** Plaintiffs request that the April 24, 2003 Order voluntarily withdrawing their class certification motions without prejudice "be vacated as to such withdrawal" should this Court find that the date of the class certification motions is dispositive of the issues here. This Court need not allow such a reinstatement of the motions because it is clear that the claims became moot prior to the initial filing of the motions in September 2002. The voluntary withdrawal of these motions for class certification has no bearing upon the disposition of these cases.

motion has been filed, and accordingly, the Third Circuit has instructed the court to dismiss the entire action including its class claims. *See Lusardi,* 975 F.2d at 974–75. The Third Circuit explained that:

> We are not aware of a single case holding that a district court has subject matter jurisdiction to hear a motion to certify filed by named plaintiffs whose personal claims have expired. Without a rule that plaintiff have a live claim at least when the motion to certify is filed, the "case or controversy" requirement would be almost completely eviscerated in the class action context, since almost anybody might be deemed to have standing to move to certify a class.

*Id.* at 983.

Here, therefore, the Court must dismiss all class claims. In so doing, the Court does not make any finding as to the viability of the claims of those in the putative class. There may be an individual in the putative class who has been deprived of benefits due under his plan because of monies taken pursuant to a subrogation or reimbursement clause. There may also be an individual in the putative class who may eventually be resubjected to a subrogation or reimbursement lien should the law of New Jersey change and allow defendants to again reassert such liens.[33] Here, this Court is simply dismissing the claims of the putative class in this case; the dismissal is without prejudice to their reassertion by an appropriate named plaintiff.[34] In these actions, there is no named plaintiff with a justiciable claim who is able to represent their interests. Where the claims of the named plaintiffs become moot

---

[33]. Defendants have certified that even if the law should change and allow reassertion of subrogation and reimbursement liens, they will never reassert the claims against plaintiffs Collins and West arising out of the accidents at issue here.

[34]. Plaintiffs have argued that this Court should ignore *Lusardi* and allow plaintiffs to continue to pursue their class claims because the mooting of their individual claims did not moot their class claims. (Pl.'s Supp. Br. at 12.) The Court has considered this argument in light of the procedural history of *Colbert v. Dymacol,* 302 F.3d 155 (3d Cir.2002), a Third Circuit case where the named plaintiff refused an Offer of Judgment pursuant to Fed.R.Civ.P. 68 made prior to his filing of a motion for class certification. The plaintiff then moved for class certification, which was granted. The defendant then filed a motion for interlocutory appeal, arguing that its Rule 68 offer equal to the full monetary relief plaintiff could obtain individually provided full relief to the plaintiff, mooted his claim prior to the filing of a class certification motion, and thus and required dismissal of the entire action based on *Lusardi.*

Initially, on August 28, 2002, a panel of the Third Circuit agreed with the defendants, but on October 3, 2002, the Third Circuit vacated the August 28th decision and ordered the matter to be reheard *en banc. See Colbert v. Dymacol,* 305 F.3d 1256 (3d Cir.2002). After rehearing the case *en banc,* on March 10, 2003, the Third Circuit dismissed the appeal as improvidently granted, stating:

> [T]he question presented by Appellants in their Application Pursuant to Fed.R.Civ.P. 23(f) for Permission to Appeal from the October 2, 2001 Order was inaccurate in that Appellee had not received all relief requested in his complaint.

*See Colbert v. Dymacol,* 2003 LEXIS 4531 (3d Cir. Mar. 10, 2003). The requested relief that *Colbert* plaintiff did not receive was the class relief.

Here, plaintiffs requested individual monetary and injunctive relief, as well as class relief, and argue, along the lines of the *Colbert* plaintiffs, that this Court cannot dismiss their complaints because they have not received all the relief they requested since they included class claims. There is an essential difference, though, between the facts of this case and those of *Colbert* because in *Colbert,* the named plaintiff was provided a Rule 68 Offer of Judgment providing full recovery for plaintiff's actual loss, and here, the named plaintiffs' cases simply became moot. Rule 68 allows a defendant to offer his adverse party judgment in that party's favor for a certain specified amount prior to trial. Fed.R.Civ.P. 68; *see also Marek v. Chesny,* 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). If the plaintiff accepts the defendant's offer, judgment is entered against the defendant and the parties are spared the expense of trial. If the plaintiff rejects the offer, the parties proceed to trial but, if the plaintiff does not obtain a judgment that is more favorable than what she was offered, she must pay any costs incurred after the offer was made. Fed.R.Civ.P. 68. An offer of judgment for the full monetary amount that a plaintiff may receive in the lawsuit, thus forces the plaintiff to accept the offer, for she will never be able to obtain a more favorable judgment at trial. The *Colbert* defendant thus argued that the *Colbert* plaintiff could not refuse the Rule 68 Offer of Judgment because he would never be able to receive a more favorable individual judgment at trial. In finding that the *Colbert* plaintiff "had not received all relief requested in his complaint," the Third Circuit allowed the *Colbert* plaintiff to refuse the Rule 68 Offer of Judgment and proceed to trial on behalf of his individual claim and the claims of the class.

prior to the filing of a motion for class certification, the named plaintiff cannot serve as a representative of the class and the claims of the putative class cannot proceed. Thus, this Court will dismiss the class based relief claims along with the claims of plaintiffs West and Collins.

The accompanying Order is entered.

### ORDER

This matter having come before the Court on the motion of defendant Health Net of the Northeast for summary judgment on the claims of plaintiff Carole West in *West v. Health Net of the Northeast,* Civil No. 01–5217(JBS), [Docket Item 23–1], and on the motion of defendant Oxford Health Plans for summary judgment on the claims of plaintiff David Collins in *Collins v. Oxford Health Plans,* Civil No. 01–5237(JBS), [Docket Item 20–1]; this Court having reviewed the original and supplemental submissions of the parties and having heard the arguments of the parties on July 17, 2003; and for the reasons in the Opinion of this date;

IT IS this _____ day of August, 2003, hereby **ORDERED** that the motion of defendant Health Net of the Northeast for summary judgment on the claims of plaintiff Carole West in *West v. Health Net of the Northeast,* Civil No. 01–5217(JBS), [Docket Item 23–1] be, and hereby is, **GRANTED;** and

**IT IS FURTHER ORDERED** that all individual claims of plaintiff West in *West v. Health Net of the Northeast,* Civil No. 01–5217(JBS), be, and hereby are, **DISMISSED WITH PREJUDICE;** and

**IT IS FURTHER ORDERED** that all claims of the putative class sought to be represented by plaintiff West in *West v. Health Net of the Northeast,* Civil No. 01–5217(JBS), be, and hereby are, **DISMISSED WITHOUT PREJUDICE;** and

The present case offers fundamentally different facts than *Colbert* because here, the plaintiffs seek to ignore the mootness of their individual claims and proceed to trial on behalf of the claims of the putative class only. Since West and Collins were ineligible to obtain relief on behalf of their own claims before any class certi-

**IT IS FURTHER ORDERED** that the motion of defendant Oxford Health Plans for summary judgment on the claims of plaintiff David Collins in *Collins v. Oxford Health Plans,* Civil No. 01–5237(JBS), [Docket Item 20–1], be, and hereby is, **GRANTED;** and

**IT IS FURTHER ORDERED** that all individual claims of plaintiff Collins in *Collins v. Oxford Health Plans,* Civil No. 01–5237(JBS), be, and hereby are, **DISMISSED WITH PREJUDICE;** and

**IT IS FURTHER ORDERED** that all claims of the putative class sought to be represented by plaintiff Collins in *Collins v. Oxford Health Plans,* Civil No. 01–5237(JBS), be, and hereby are, **DISMISSED WITHOUT PREJUDICE.**

fication motion was filed, they lost the capacity to represent any class interests. Such a situation still falls within the law of *Lusardi* which requires dismissal of the entire class action, because a class certification motion cannot be filed by named plaintiffs whose personal claims have expired. *Lusardi,* 975 F.2d at 983.